No. 26,988.

THE FIRST NATIONAL BANK OF LEWIS, *Appellee*, v. THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. FIDELITY INSURANCE—*Construction of Bond or Contract—Time for Filing Claim*. A surety company executed to a bank a bond insuring it against loss by embezzlement committed by its cashier—

    ". . . after the 1st day of January, 1919, and before the termination of this bond by the dismissal or retirement of the employee from the service of the employer, by the discovery of loss hereunder, or by cancellation by the employer or the surety."

    It contained these provisions:

    "The foregoing is subject to the following conditions, which shall be conditions precedent to any recovery hereunder:

    . . . . . . . . . . . . . . .

    "7th. Any claim hereunder must be made within three (3) months after the termination of this bond or within three (3) months after the date of expiration of each and every period of twelve months from the date hereof, during the continuance of this bond, as to the acts or defaults of the employee committed during any such period of twelve (12) months."

    It is held that a claim under the bond on account of any embezzlements made by the cashier since January 1, 1919, was timely if made within three months after discovery.

2. SAME—*Termination of Liability—Continuing Bond*. Such a bond is held to have been a continuing one, running not to any specific time, but until terminated by dismissal or retirement of the cashier, discovery of a loss, or cancellation by one of the parties.

3. SAME—*Liability—Effect of Payment by Another Insurer on Different Items*. The payment of a loss by another insurer is held not material here because it was not based on the same items and the total loss exceeded the amount of both bonds.

4. SAME—*Embezzlement in Capacity of Cashier—Evidence*. The evidence is held to support a finding that embezzlements of the cashier were perpetrated in his capacity as such.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed January 8, 1927. Affirmed.

*Charles P. Embry, Benjamin F. Hegler, A. V. Roberts*, all of Wichita, and *W. E. Broadie*, of Kinsley, for the appellant.

*Elrick C. Cole, William Osmond, T. B. Kelley*, all of Great Bend, and *A. L. Moffat*, of Kinsley, for the appellee.

Fidelity Insurance, 25 C. J. pp. 1093 n. 45, 1096 n. 79, 1099 n. 13, 1103 n. 57, 1109 n. 33, 1115 n. 33.

The opinion of the court was delivered by

Mason, J.: The Hartford Accident and Indemnity Company executed to the First National Bank of Lewis, Kan., a bond effective January 1, 1919, for $10,000, indemnifying it against loss by embezzlement of its cashier, and a like bond for $5,000 in the case of its assistant cashier. The cashier was guilty of embezzlements from time to time, beginning December 7, 1920, none of which, however, was discovered until March 5, 1924. They amounted in the aggregate to over $21,000. The assistant cashier embezzled sums beginning in April, 1923, discovered May 8, 1924, and amounting to $600.69. The bank brought this action upon the bonds and recovered judgment for $10,600.69 and interest thereon, from which the defendant appeals.

1. The principal contention of the defendant is that by the terms of the bond it was not liable with respect to any embezzlement occurring prior to the year in which the bond was terminated unless a claim based upon it were made before the expiration of the first three months of the calendar year succeeding that in which it occurred. The plaintiff contends that it had the option to make the claim within the period just indicated, or within three months after the discovery of the embezzlement. The decision of this question turns upon the interpretation of these provisions of the cashier's bond, the language of the assistant's bond being the same except as to names and amounts:

"The Hartford Accident and Indemnity Company (hereinafter called the surety), in consideration of an agreed premium, binds itself to pay to the First National Bank (hereinafter called the employer), within sixty (60) days after satisfactory proof thereof, such pecuniary loss, not exceeding ten thousand ($10,000) dollars, which the employer shall have sustained of money or other personal property (including money or other personal property for which the employer is responsible) through larceny or embezzlement committed by Lorenzo Pleasant Weaver (hereinafter called employee) as cashier in the service of the employer, at Lewis, Kan., after the 1st day of January, 1919, and before the termination of this bond by the dismissal or retirement of the employee from the service of the employer, by the discovery of loss hereunder, or by cancellation by the employer or the surety.

"The foregoing is subject to the following conditions, which shall be conditions precedent to any recovery hereunder:

.   .   .   .   .   .   .   .   .   .   .   .   .

"7th. Any claim hereunder must be made within three (3) months after the termination of this bond or within three (3) months after the date of expira-

tion of each and every period of twelve months from the date hereof, during the continuance of this bond, as to the acts or defaults of the employee committed during any such period of twelve (12) months."

The plaintiff contends that in the situation presented the policy expressly gives it an alternative with respect to the time of making a claim—either to make it within three months from the discovery of an embezzlement, which automatically terminated the bond, or to make it before the expiration of the first three months of the year in which the embezzlement occurred for which indemnity is sought. The defendant urges that such an interpretation renders the second alternative nugatory, inasmuch as the bond terminates when an embezzlement is discovered and there would be no room to apply the second clause. That, however, is itself a matter of interpretation. The plaintiff is clearly right in saying that the clause preceding the word "or" in the paragraph designated as 7th, considered by itself, expressly allows a claim to be made within three months after the discovery of the embezzlement. If the clause that follows is inconsistent with that meaning, occasion arises for finding an interpretation of one part of the paragraph or the other such as to effect a reconciliation. One construction that seems open is to regard the words "every period of twelve months from the date hereof, during the continuance of this bond" as including a year during which the bond was at any time in force, although terminated before its end by the discovery of an embezzlement. The effect of this reading would be that a claim under the bond might be made within three months from the discovery of any embezzlement, or if that were not done the plaintiff would still have three months from the end of the year to assert its demand, upon any defaults that had occurred during the year.

At all events, inasmuch as the bond in plain terms offers the insured an option as to time of making a claim, the rule requiring ambiguous language in a policy to be construed against the insurer justifies the plaintiff in relying upon that portion of the paragraph in question notwithstanding any difficulty in giving effect to the rest. Moreover, since of course a claim could not be made under the bond until a default has been discovered, it seems fair to lean away from a construction which fixes a time for making a claim before such discovery. Doubtless the purpose of such a provision, as it is construed by the defendant, would be to provide that there should

First Nat'l Bank v. Hartford Accident and Indemnity Co.

be no liability for any embezzlement not discovered within three months of the end of the year in which it occurred; but to express this idea by a limitation on the time within which a claim must be made tends in itself to some obscurity.

In the defendant's brief it was said:

"It will be observed from the above quotations from the bond that the Hartford Accident and Indemnity Company agreed to reimburse the bank for such pecuniary loss as it might sustain from the embezzlement of Weaver as its cashier after the first day of January, 1919, and before the termination of the bond by dismissal or retirement of Weaver by discovery of loss or by cancellation. Had the bond ended here there would be no ground, of course, for the contention that the appellant is not liable for losses which occurred before January 1, 1923, but the above provisions of the bond are limited by the following statement: 'The foregoing is subject to the following conditions, which shall be conditions precedent to any recovery hereunder.' Among the conditions which follow are the conditions set forth in the seventh paragraph or cut-off clause. Reading all of the clauses of the bond together, it becomes a condition precedent to recovery that any claim under the bond must be made within three months after the date of the expiration of each and every twelve-months period during which the bond is in force as to acts or defaults of the employee committed during any such period of twelve months, or, in case the default occurs during the last twelve months during which the bond is in force, within three months after the termination of the bond."

In the last clause of this quotation the phrase "during the last twelve months during which the bond is in force" seems to be used to designate the year in which the default occurs, a meaning the same as that we have suggested may be given to the words of the bond—"every period of twelve months from the date hereof, during the continuance of this bond."

The defendant's brief says further on the matter of interpretation:

"The provision for making a claim within three months after the termination of the bond refers to the termination of the bond by the death, dismissal, or retirement of the employee, or by agreement of the parties, and also to the making of a claim for defaults occurring during the elapsed part of the twelve-months period during which such default is discovered. As to losses occurring during such current twelve-months period, the claim must be made within three months after the termination of the bond by discovery of the loss. As to losses occurring during the immediately previous twelve-months period, the claim must be made within three months after the expiration of such period. Further back than this, all claims are cut off."

This interpretation might be acceptable were it not for the rule that obscurities and ambiguities are to be construed against the in-

surer. If the draftsman, when the form of policy was prepared, had in mind what the defendant now urges it certainly would not have been difficult to select language that would have made that purpose clear beyond controversy. We do not question the validity of the contract if interpreted as the defendant asks, but we cannot accept the interpretation.

2. The defendant cites a text to the effect that generally the renewal of a fidelity policy or bond constitutes a separate and distinct contract for the period of time covered by such renewal. (25 C. J. 1109.) The policy in this case, however, seems quite clearly to be a continuing one, requiring no renewal, and running not to any specific time, but indefinitely, until terminated by dismissal or retirement of the employee, the discovery of a loss, or cancellation by one of the parties. The fact of the bond running continuously from January 1, 1919, may have been a feature having the natural effect of making it exceptionally attractive. If so there is the greater reason to avoid a construction which, in the guise of fixing the time for making a demand under it, would in effect confine its protection to embezzlements discovered within a period varying from fifteen months to three months from their commission.

3. It was shown that another bonding company had insured the fidelity of the cashier and assistant cashier and had paid the plaintiff $7,258.71 on account thereof. The defendant relies on this fact as to that extent constituting a bar to a further recovery. The payment of the other company is not material here, for the items composing it are not necessary to make up the amount for which judgment was rendered in this action, and as we hold the plaintiff entitled to recover losses from the time the bond took effect, the total loss was over $21,000, being more than the amount of both bonds.

4. The defendant further claims that some of the items embezzled by the cashier were of funds intrusted to him personally for investment, for which the insurer of his fidelity as an officer of the bank was not liable. The cashier in his testimony referred to some of the embezzled money as having been given him personally to invest for the owners. He also said, however, "I mean those parties dealt with me personally. That was through the bank because I was cashier of the bank and they handed it to me for the bank to take care of, but they gave it to me personally to invest for them." There was

other testimony tending to show that he was acting as cashier in the transaction, and whether that was the case in view of all the evidence was a question for the trial court.

The judgment is affirmed.