## HARTFORD ACCIDENT & INDEMNITY CO. v. TABLER et al.

### No. 3024.

Circuit Court of Appeals, Fourth Circuit. Oct. 30, 1930.

James W. Robinson and John S. Stump, Jr., both of Clarksburg, W. Va. (Howard L. Robinson, of Clarksburg, W. Va., on the brief), for appellant.

Philip P. Steptoe, of Clarksburg, W. Va. (H. Rudkin Taylor and S. A. Powell, both of Harrisville, W. Va., and Steptoe & Johnson, of Clarksburg, W. Va., on the brief), for appellee.

Before PARKER, Circuit Judge, and GRONER and SOPER, District Judges.

SOPER, District Judge.

This case involves the interpretation of a fidelity bond executed by the Hartford Accident & Indemnity Company, as surety for the cashier of the Auburn Exchange Bank. The action was first instituted in the circuit court of Ritchie county, W. Va., by the bank against the company, to recover a loss caused by peculations of the cashier; and was afterwards removed to the District Court of the United States for the Northern District of West Virginia. The trial resulted in a directed verdict for the plaintiff in the sum of $21,462.69. This sum represented the defalcation with interest, over and above the sum of $1,950 which, together with $220.48 interest, was tendered by the company and accepted by the bank before the trial without prejudice to the latter's rights to further recovery. Pending the litigation, the bank became insolvent, and the receiver appointed in insolvency proceedings was substituted as plaintiff.

The bond was executed and delivered on May 10, 1924, and was renewed annually by the payment of renewal premiums, including the premium renewing the bond for the year beginning May 10, 1927. The bond provided in substance that the surety should pay to the bank, within 60 days after satisfactory proof, such pecuniary loss as the bank should have sustained through larceny or embezzlement committed by certain employees including the cashier, during the period commencing with the date of the bond, and ending with the termination of the suretyship by the dismissal or retirement of the employee, by the discovery of loss, or by cancellation of the bond by the employer or the surety.

The contract, however, was subject to a condition precedent to recovery, expressed in the terms following that give rise to the present controversy:

"8th. Any claim hereunder must be made within three (3) months after the termination of the suretyship for any employee or within three (3) months after the date of ex-

piration of each and every period of twelve (12) months from the beginning of the suretyship for any employee, during the continuance of this bond, as to the acts or defaults of said employee committed during any such period of twelve (12) months."

The cashier disappeared on or about November 5, 1927, and has not since been found. Subsequently it was discovered that there was a shortage in his accounts, the exact amount of which could not be immediately ascertained. But the surety was promptly notified and finally on February 5, 1928, was furnished with an itemized claim of the loss in the amount of $21,390. This sum the surety disputed in so far as it included losses suffered prior to May 10, 1927, the last anniversary of the bond, admitting liability, however, for losses incurred since that date. It will have been observed that there are two alternative clauses in article 8 of the bond governing the time within which claim thereunder must be made to fix the liability of the surety, that is to say: (a) Within three months after the termination of the suretyship; or (b) within three months after the expiration of each period twelve months from the beginning of the suretyship during the continuance of the bond, as to defaults of the employee committed during any such period. Having these facts in mind, the surety admits some liability because the bank complied with clause (a) by making claim within three months after the termination of the suretyship upon the discovery of the loss; but contends that this liability does not cover defalcations prior to May 10, 1927, because the bank did not comply with clause (b) by making claim thereunder within three months after that anniversary date. In short, the surety says that clauses (a) and (b), properly interpreted, are not alternative; but the word "or" should be read "and" in accordance with the rule laid down in Couch, Enc. of Insurance Law, volume 1, 370. One important consequence of this interpretation is that the assured has no protection for defaults committed in any bond year unless he discovers them and makes claim for them within three months after the year ends.

█ The surety concedes the applicability of the familiar rule that ambiguous clauses in a fidelity bond should be construed most favorably to the assured, Harvey v. Union Central Life Ins. Co. (C. C. A.) 45 F.(2d) 78; but says that no interpretation of the bond in this case is reasonable except that on which it relies, for otherwise clause (b) becomes substantially inoperative, and certain portions of it meaningless and absurd. If the clauses are truly alternative, and the employer need comply only with clause (a), the surety becomes liable for any default during the life of the bond no matter how long prior to the making of a claim, provided only claim is made within three months after the discovery of the shortage or the happening of some other event which puts an end to the contract. In such a case, discovery might be so long deferred that in the meantime all opportunity for investigation on the part of the surety and all chance for reimbursement for the defalcation would have disappeared. Such an interpretation, it is said, would place a premium upon negligence on the part of the employer.

Furthermore, it is pointed out that if the word "or" between clauses (a) and (b) is used in its literal sense, then clause (b) is inoperative and without effect except as to defaults occurring since the most recent anniversary, that is to say, during the current year of the bond; because the period for making claim under clause (b) for defaults prior to the anniversary of the bond would necessarily expire before the expiration of the period described in clause (a). This result is inevitable because discovery of any loss terminates the suretyship. If then clause (b) is limited to defaults occurring since the last anniversary of the bond, it provides a variable limit within which claim may be made. If the default is discovered in the early part of the current year of the bond, claim may be made during a subsequent period which comprises the remainder of the current year and three months thereafter; but if the default is discovered at the end of the current year, claim must be made within a much shorter period, which may in fact be as short as three months. It is earnestly contended that an interpretation which requires so unusual a result is too unreasonable to be accepted.

It is also suggested that there is no good reason for extending to the employer the alternative of clause (b) for the last year of the bond as distinguished from the prior years; and that if this clause applies only to the last year of the bond, it is difficult or impossible to explain the use of the italicized words in the expression "each and every *period of twelve months* from the beginning of the suretyship for any employee *during the continuance of this bond.*" This language, it is urged, indicates more than one period of twelve months and must therefore include such periods as have been completed prior to the discovery of the loss. Conversely it is

argued that if the word "or" be taken in a conjunctive sense, both clauses in article 8 and every word and phrase thereof will take on a logical meaning and become part of a harmonious whole. Thus considered, the bond means, in the language of the surety's brief, that "claim must be made within three months after the discovery of any loss, and that no claim for default occurring during any bond year shall be valid unless made within three months after the expiration of the bond year in which such default occurs."

The language of counsel thus quoted from the surety's brief is unambiguous and clear, and shows how easy it would have been to have expressed in unmistakable terms the idea for which the surety now contends. Compared with this lucid expression, the uncertainty of the article under discussion becomes the more apparent. It is therefor not surprising to find that the courts have differed as to the meaning to be placed upon it. We find, on the one hand, that the Commission of Appeals of Texas, in Hartford Accident & Indemnity Co. v. Neiman-Marcus Co., 285 S. W. 603, has rendered a decision under a similar bond in the surety's favor, while the Supreme Court of Kansas, in First National Bank of Lewis v. Hartford Accident & Indemnity Co., 122 Kan. 334, 252 P. 199, has reached the opposite conclusion. There can be, we think, no clearer demonstration than that afforded by these conflicting decisions of the obscurity of the surety company's language and no better occasion for the application of the rule that the language used by a surety should be interpreted in the sense most favorable to the assured. We agree with the conclusion of the Supreme Court of Kansas. Clause (a) clearly leaves the reader to suppose that a default occurring at any time within the period covered by the bond will be collectible if claimed within three months after the bond expires. Clause (b), when taken by itself, presents the alternative that if the default occurs in the last year of the bond, any claim within three months after the conclusion of the year will be honored. It is quite true, as the forceful argument of the surety points out, that there are phrases within clause (b) which would be more appropriate if the clause were taken to refer to each twelve month period during the life of the bond prior to the last anniversary. Nevertheless it does not seem to us to be unreasonable in this case to limit this clause to the concluding year of the bond. In our view the assured was not told with sufficient clearness in the contract that the liability of the surety as to each year of the bond expired within three months after the end of the year in the absence of any claim upon the surety; and that after the expiration of the three-month period, the assured had no protection for existing defaults which it had not discovered. It was of course to the interest of both parties that diligence be constantly exercised to ascertain whether the employees had been honest in the performance of their duties; but this precaution might have been taken with greater care if the employer had been told in unmistakable terms that neglect was likely to be followed by loss of substantial protection under the bond. Confessedly the meaning of the terms employed is open to debate, and we think that it would be unreasonable under the circumstances to adopt the surety's interpretation.

The appellant also objects to the inclusion in the amount of the directed verdict of the interest on the several sums embezzled from the respective dates of loss to that of the verdict, and calls attention to the wording of the bond wherein the surety bound itself to pay within sixty days after satisfactory proof thereof such pecuniary loss as the employer should suffer. The contention is that the only obligation of the surety in this regard was to pay interest from a date sixty days after proof of loss. It is by no means clear that the word loss should be confined to the actual sums embezzled and should not include interest thereon from the time of loss. But it is unnecessary to decide that question in this case, because the point made was not raised in the court below. On the contrary, the surety in its plea of tender offered not only the principal sum of the amount embezzled during the last year of the bond, but also interest thereon.

Since there was ample uncontradicted evidence of the defalcations, the court was justified in directing a verdict in plaintiff's favor. The judgment should therefore be affirmed.