(720 P.2d 1129)

No. 57,893

HILDA NASH, *Plaintiff*, v. ROBERT C. ADKINS, *et al.*, *Defendant and Third-Party Plaintiff/Appellee*, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Third-Party Defendant/Appellant*, and SELKERK METALBESTOS COMPANY, *et al.*, *Third-Party Defendants*.

Opinion filed June 26, 1986.

*Monti L. Belot*, of Hall, Levy, Lively, Viets, DeVore & Belot, of Coffeyville, for appellant.

*Ronald P. Wood*, of Gates & Clyde, Chartered, of Overland Park, for appellee.

Before DAVIS, P.J., MARION W. CHIPMAN, District Judge, assigned, and SAM K. BRUNER, District Judge, assigned.

CHIPMAN, J.: This is an appeal by Hartford Accident and Indemnity Company (Hartford) from a judgment interpreting the provisions of an insurance contract. Defendant Robert C. Adkins installed a wood-burning stove in the home of plaintiff Hilda Nash. Some time after completion of his work, Nash's home was damaged by fire. Nash initiated this lawsuit by filing a petition alleging defective workmanship by Adkins caused the fire. Hartford, Adkins' insurance carrier, denied coverage and refused to defend. Adkins joined Hartford claiming coverage for the loss. The trial court granted defendant Adkins' motion for summary judgment on the coverage issue. From this ruling Hartford appeals.

The sole question on appeal is whether "completed operations" coverage existed for the fire damage under the Hartford policy.

The Hartford policy, on its first page, provides that "Insurance is afforded by the Coverage Parts forming a part hereof, subject to such limits of liability as are stated therein and subject to all the terms of the policy having reference thereto." The schedules and forms which are part of the policy provide bodily injury and property damage coverage for two separate risk classifications corresponding to jobs performed by Adkins. Form L-3503-1T specifies both risk classifications and refers to extension schedule L-3125. This extension schedule spells out the two rating classifications: carpentry and building or premises. The building or premises classification specifically includes completed operations but no such wording appears under the carpentry classification.

Form L-3503-1T also refers to certain endorsements forming part of the policy. Endorsement L-3014-0, entitled Exclusion Completed Operations and Products Hazards, provides in part that:

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury . . . included within the Completed Operations Hazard . . . ."

The term "completed operations hazard" is specifically defined in the policy as follows:

"When used in this policy (including endorsements forming a part hereof):
. . . .
'*Completed operations hazard*' includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured*. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
"(1) When all operations to be performed by or on behalf of the *named insured* under the contract have been completed,
"(2) When all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or
"(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed, shall be deemed complete."

The forms and endorsements, read in conjunction with the

definitions of completed operations hazard, establish that bodily injury and property damage covered for completed operations is *excluded* from the carpentry classification, but specifically *included* in the custodial classification.

Completed operations coverage for the carpentry classification was available. However, at the time the Hartford policy was obtained as a replacement for an American States Insurance Company policy, Adkins requested no additional coverage under the carpentry classification. It should be noted that Adkins, in his previous policy with American States Insurance Company, was advised of the availability of completed operations coverage but did not avail himself of such coverage.

Adkins argues that the policy is ambiguous because it contains the terms "completed operations hazard," "operations coverage," and "including completed operations." He contends that the use of these terms would lead a reasonable person to conclude that the policy provides completed operations coverage for both risk classifications. His focus upon these terms excludes a consideration of the policy as a whole. *Scott v. Keever,* 212 Kan. 719, 723, 512 P.2d 346 (1973). The above terms appear in the definitional section of the policy as well as on the form which excludes completed operations coverage for carpentry work.

Adkins also contends that ambiguity is created because the completed operations coverage was not excluded on the form which indicates other coverage exclusions. However, that same form refers the reader to Form L-3014-0 which does exclude completed operations from the carpentry classification.

Finally, Adkins contends that the "policy sheet" covers completed operations. While the "certificate of insurance" provides that "products/completed operations hazard [is] included," it does not confer completed operations coverage for carpentry:

"THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES LISTED BELOW."

The construction of an insurance contract is a matter of law to be determined by the courts and if the facts are uncontroverted, then the court determines the policy's coverage. *Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, Syl. ¶ 1, 449 P.2d 477 (1969). If the contract of insurance is clear and unambiguous, the

words "are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms. [Citations omitted.]" *Goforth*, 202 Kan. at 417.

To be ambiguous, the contract must contain provisions of doubtful or conflicting meaning. Ambiguity "does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. [Citations omitted.]" *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 491, 464 P.2d 253 (1970). Ambiguity is not to be derived from or created by the fragmentation of the contract. *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, 180, 660 P.2d 1374 (1983). The terms of the insurance contract must be considered as a whole. *Scott v. Keever*, 212 Kan. at 723.

Upon reading the contract as a whole together with its endorsements, one is not "genuinely uncertain" whether the contract provides completed operations coverage for the carpentry classification. We hold that the policy is unambiguous and provides precisely the coverage Adkins requested and paid for. It does not provide completed operations coverage for Adkins' carpentry business.

The judgment of the trial court is reversed and remanded for entry of judgment in accordance with this opinion.

Reversed and remanded.