(789 P.2d 1196)

No. 64,042

PENALOSA COOPERATIVE EXCHANGE, *Appellee*, v. FARMLAND MUTUAL INSURANCE COMPANY, *Appellant*.

Opinion filed April 13, 1990.

*Daniel H. Diepenbrock*, of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, for the appellant.

*Gerald L. Green*, of Gilliland & Hayes, P.A., of Hutchinson, for the appellee.

Before GERNON, P.J., DAVIS, J., and STEVEN P. FLOOD, District Judge, assigned.

DAVIS, J.: The defendant, Farmland Mutual Insurance Company, issued a policy insuring plaintiff, Penalosa Cooperative Exchange, against employee dishonesty. Plaintiff filed two claims based upon employee embezzlement for two policy periods. Defendant paid the first claim but denied the second on the grounds that the embezzlement resulted from a series of similar or related acts which, under the policy, constituted a single occurrence. The trial court, on stipulated facts, granted summary judgment to plaintiff for its second claim of $100,000. The defendant appeals. We affirm.

Wayne Winter was employed by plaintiff as its general manager from June 1, 1979, until January 7, 1986. During that time, he embezzled at least $740,000. Of that sum, $228,900 was embezzled on 14 different occasions between July 19, 1984, and May 31, 1985, and $511,100 was embezzled on 12 different occasions between June 7, 1985, and December 17, 1985. On each occasion, Winter committed the embezzlement by transferring plaintiff's funds by wire or by check to a commodities broker for speculation in the commodities market.

Farmland originally issued its policy to plaintiff from June 1, 1984, through June 1, 1985. The policy was renewed from June 1, 1985, through June 1, 1986. The limit of liability for loss caused by employee dishonesty was $100,000.

Plaintiff filed two claims with Farmland for $100,000 each. Farmland paid $100,000 under the policy in effect from June 1, 1984, to June 1, 1985, but denied the second claim. Farmland

argues that the unambiguous terms of its policy allow plaintiff to recover only once for a single occurrence.

Because the facts were submitted by stipulation, and because the construction of a written instrument is a question of law, our standard of review is de novo. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987); *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, Syl. ¶ 4, 545 P.2d 399 (1976).

The question for resolution requires that we interpret the policy of insurance issued by Farmland. Before dealing with the applicable policy provisions, it will be helpful to set forth the rules to be applied in our interpretation of Farmland's policy.

(1) Insurance is a matter of contract. The parties to a contract of insurance may choose whatever terms they wish, and courts will enforce the policy as written so long as the terms do not conflict with pertinent statutes or with public policy. *Western Casualty & Surety Co. v. Trinity Universal Ins. Co.*, 13 Kan. App. 2d 133, Syl. ¶ 1, 764 P.2d 1256 (1988), *aff'd* 245 Kan. 44, 775 P.2d 176 (1989).

(2) If a dispute arises as to the meaning of the terms chosen by the parties, courts will attempt to determine what the parties intended. To determine this intent, courts will consider the policy as a whole and will examine the language used by the parties, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. *American Media Inc. v. Home Indemnity Co.*, 232 Kan. 737, Syl. ¶ 1, 658 P.2d 1015 (1983); *Mah v. United States Fire Ins. Co.*, 218 Kan. 583, Syl. ¶ 1, 545 P.2d 366 (1976).

(3) If there is no uncertainty about the meaning of the policy, it will be enforced as written. *American Media*, 232 Kan. 737, Syl. ¶ 5; *Nash v. Adkins*, 11 Kan. App. 2d 326, 328-29, 720 P.2d 1129 (1986).

(4) If there is uncertainty about the meaning of the policy, courts determine the meaning by applying rules of construction. These rules do not apply unless the court first determines that the policy is ambiguous. A policy is not ambiguous unless, viewing it as a whole, there is genuine uncertainty as to which one of two or more possible meanings is the proper meaning. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741

(1987). Ambiguity may not be created by viewing the policy in fragmentary segments. *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, 180, 660 P.2d 1374 (1983); *Nash v. Adkins*, 11 Kan. App. 2d at 329. And the rules of construction do not " 'authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' " *Topeka Tent & Awning Co. v. Glen Falls Ins. Co.*, 13 Kan. App. 2d 553, 556, 774 P.2d 984 (1989) (quoting *Central Security Mutual Ins. Co. v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 [1984]).

Where genuine ambiguity exists, courts will apply one of the two following rules:

(1) The first is the doctrine of "reasonable expectations". This doctrine comes in many forms. See Jerry, Understanding Insurance Law § 25D (1987). The version recognized in Kansas is relatively narrow. Recognizing that insurance contracts are typically adhesion contracts in which the terms are drafted by the insurer and not negotiated between the parties, courts have required insurers to state their intended meaning clearly and distinctly. If the meaning is not stated clearly, and a reasonable person in the insured's position would have understood the words of the policy to mean something other than what the insurer intended, that understanding will control. *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 80-82, 483 P.2d 1072 (1971); see also *American Media*, 232 Kan. 737, Syl. ¶ 6; *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 633-34, 438 P.2d 46 (1968).

(2) The second is the rule of liberal construction. If the intent of the parties cannot be determined from the contract, courts will construe the policy in the way most favorable to the insured. *Lightner*, 242 Kan. at 36; *American Media*, 232 Kan. 737, Syl. ¶ 4. This rule is simply a rule of construction to aid the court in determining the intent of the parties, and its basis is that the drafter of a contract must suffer the consequences if he does not make the terms clear. *Lightner*, 242 Kan. at 36.

The applicable provisions of the policy are:

"II. CRIME INSURANCE

"A. PROPERTY COVERED

We cover money, securities, personal property and stock owned by you while within your place of business.

. . . .
"C. CONDITIONS
  "1. Employee Dishonesty
      "The following conditions apply to this peril:

      . . . .
      "b. Dishonest or fraudulent acts or a series of similar or related acts
      of any employee acting alone or in collusion with others during the
      policy period shall be deemed to be one occurrence for applying the
      limit of liability.
      "c. Loss is covered only if discovered not later than one year from
      the end of the policy period, and then this insurance shall apply only
      to loss sustained during the policy period.
      "d. If more than one insured is covered under this policy, our liability
      shall not exceed the amount for which we would be liable if there
      was only one insured.
      "e. Regardless of the number of years this policy shall continue in
      force, the limit of liability shown in the declarations shall not be
      cumulative from year to year.

      . . . .
  "3. Employee Dishonesty; Destruction and Disappearance; Burglary,
Robbery or Theft and Depositors Forgery
      "The following conditions apply to these perils:
      "a. Our liability for loss in any one occurrence shall not exceed the
      amount stated in the declarations for that peril.
      "b. All loss incidental to an actual or attempted fraudulent, dishonest
      or criminal act or series of related acts at the premises, whether
      committed by one or more persons, shall be deemed to arise out of
      one occurrence."

The "policy period" is defined under "general policy conditions"
to begin and end at the dates and times specified in the decla-
rations page.

Farmland argues that, by defining a related series of losses as
a single occurrence, by limiting the insurer's liability for losses
resulting from a single occurrence to the policy limits, and by
providing that the limits of liability would not be cumulative from
year to year, it is obvious that the parties intended to limit
Farmland's liability for an act of embezzlement by a single em-
ployee to $100,000, regardless of whether the embezzlement took
place during one policy period or two.

Plaintiff responds with two arguments: (1) Because Section II-
C-1-b defines an "occurrence" as related acts during the policy
period, related acts occurring during two policy periods cannot
constitute a single occurrence; and (2) renewal of the contract for

the second policy period constituted a separate and independent contract rather than a mere continuation of the first contract.

Our consideration of plaintiff's first argument leads us to the conclusion that the additional coverage exists under Farmland's policy. Insurance policies typically limit the insurer's liability to a stated sum during the policy period. Insurance policies do not, however, normally limit the insurer's liability to a stated sum during the life of the policy when the policy is renewed for additional periods by the payment of an additional premium. Normally, the insured expects the policy limits to again become available once the policy is renewed.

It would therefore seem that a reasonable person in the position of the insured would have expected, upon reading the policy, that the policy provided coverage up to $100,000 for any acts of embezzlement committed during the policy period, regardless of whether these acts were part of a series of acts originally begun during a previous policy period or ended during a later policy period, so long as the acts were discovered and reported within one year after the end of the policy period. Thus, at any given time, coverage would exist under both the existing policy and the previous policy, since the previous policy would necessarily have ended less than one year earlier.

Farmland responds that such an interpretation is based upon one clause in the policy relating to policy period which if read with other provisions of the policies will not support such an interpretation. Farmland argues that policy period provisions must be read together with II-C-1-e, which states that, regardless of the number of years the policy continues in force, the limit of liability shown on the declaration page "shall not be cumulative from year to year."

Undoubtedly, Farmland meant to limit its liability for any losses caused by a single, dishonest employee to $100,000 but, as pointed out by plaintiff, the above language could be read merely to mean that liability under the current policy does not attach for losses occurring during prior periods. While such a construction may be strained, it does find support in several decisions. See *Globe Indemnity Co. v. Wolcott & Lincoln*, 152 F.2d 545, 546-49 (8th Cir. 1945); *City of Miami Springs v. Travelers Indem. Co.*, 365 So. 2d 1030, 1031-32 (Fla. Dist. App. 1978); *Great*

*American Indemnity Co. v. State*, 229 S.W.2d 850, 853 (Tex. Civ. App. 1950).

We believe that the policy can reasonably be read either to provide coverage or not to provide coverage. While the coverage question is close, Farmland has failed to clearly state within the provisions of the policy that its liability under circumstances like those in this case shall be limited to $100,000.

Whether an insured is entitled to recover the limits of liability for each year that a fidelity bond or policy is in effect when the employee's dishonest act took place in more than one year is a question that has been the subject of decisions dating back to at least 1901. See *Mayor of Brunswick v. Harvey*, 114 Ga. 733, 40 S.E. 754 (1901). It has been analyzed in treatises dating back to at least 1909. See Frost, The Law of Guaranty Insurance, § 40 (2d ed. 1909). It has been the subject of law review articles dating back to at least 1928. See Note, *Fidelity Bonds—Does It Pay to Renew Them?*, 27 Mich. L. Rev. 442 (1928). And, it has been the subject of multiple A.L.R. annotations, the most recent being in 1949. See Annot., 7 A.L.R.2d 946; see also *Docking v. National Surety Co.*, 122 Kan. 235, 240, 252 Pac. 201 (1927) (fidelity bond is, in effect, a contract of insurance and will be treated as such).

In spite of this attention, no clear answer has emerged. The courts that have decided the question are divided. See *State ex rel. Guste v. Aetna Cas. & Sur. Co.*, 429 So. 2d 106, 108 (La. 1983), and cases cited therein; and Note, *Insurance—Fidelity Bonds—Renewals as Affecting the Liability of Surety*, 25 N. C. L. Rev. 341 (1947). It was entirely foreseeable that this question would arise under the policy as drafted by Farmland. It was also foreseeable that, without a specific policy provision addressing this problem, the policy would be strictly construed against Farmland. Yet, Farmland did not address this problem expressly and unambiguously. See *Gowing*, 207 Kan. at 82; and *First Nat'l Bank v. Hartford Accident and Indemnity Co.*, 122 Kan. 334, 338, 252 Pac. 199 (1927) ("If the draftsman, when the form of policy was prepared, had in mind what the defendant now urges it certainly would not have been difficult to select language that would have made that purpose clear beyond controversy."). By failing to limit its coverage in clear and unambiguous terms, Farmland assumed the risk that a court in this state would find coverage to exist.

Because the policy is ambiguous, because a reasonable person in the insured's position would expect coverage to exist, and because ambiguities must be resolved in favor of the insured, we conclude that coverage exists.

Affirmed.