**ST. PAUL FIRE & MARINE INSURANCE COMPANY,**
Plaintiff,

v.

**Hong Hun CHONG, Sun Ho Chang, and Sang Yong Kim, Defendants.**

**Civ. A. No. 91–2141–0.**

United States District Court,
D. Kansas.

March 2, 1992.

**184**

Michael P. Oliver, Wallace, Saunders, Austin, et al, Overland Park, Kan., for plaintiff.

Gregory M. Dennis, Perry & Hamill, Overland Park, Kan., Veronica Jongenelen, Benson & McKay, Kansas City, Mo., Rayborn C. Johnson, Jr., Bartley & Johnson, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on plaintiff St. Paul Fire & Marine Insurance Company, Inc.'s ("St. Paul's") motion for discharge and enjoinment (Doc. § 21). St. Paul filed this action for declaratory relief to determine the policy limits of a professional liability insurance policy. Having reviewed St. Paul's motion, the court is now prepared to rule.

*Factual Background*

The relevant facts are undisputed: [1]

1. Defendants Hong Hun Chong ("Chong"), Sun Ho Chang ("Chang"), and Sang Yong Kim ("Kim") are citizens of the Republic of Korea and are lawful resident aliens.

2. Kent Owen Docking ("Docking") is a Kansas attorney licensed to practice before the Supreme Court of the State of Kansas and the United States District Court for the District of Kansas. Docking was admitted to practice on September 20, 1985.

3. On May 24, 1986, Chong, Chang, and Kim were arrested. Each was subsequently charged in the District Court of Leavenworth County, Kansas, with two counts of aggravated kidnapping.

4. At the time of their respective arrests, the three defendants understood little, if any, English.

5. The factual allegations supporting the criminal charges all occurred at or about the same time. Further, the complaining witnesses were the same against all three defendants.

6. Shortly after the arrests, Docking agreed to provide legal representation to each of the three defendants.[2] In turn, each of the defendants paid Docking a retainer of $5,000. Docking assumed legal representation of the three defendants in spite of his lack of felony jury trial experience, lack of experience in representing non-English speaking persons, lack of experience on immigration law consequences that might arise from criminal proceedings, and with knowledge that Chong had given a written statement to law enforcement officers possibly implicating Kim and Chang.

7. Proceedings before the District Court of Leavenworth County, Kansas, were not simultaneously, properly, and/or adequately translated for the three defendants from English into Korean because Docking only secured one interpreter to be shared by the three defendants, and this retained interpreter did not simultaneously and/or properly during court proceedings translate from English into Korean and vice versa. Further, Docking failed to inquire into and establish the qualifications

---

1. St. Paul has entered into factual stipulations with each of the defendants. Because the stipulations are nearly identical, the court will rely heavily on them for purposes of setting forth the factual background of this case.

2. The record is not clear how Docking came into contact with each of the defendants.

of the retained interpreter on the court record as required by Kansas law.

8. After little, if any, investigation or research, Docking recommended to each defendant, without adequate and complete explanation, that each should plead guilty to the counts charged. In so doing, Docking informed each defendant that each would receive probation, rather than a prison sentence, if the court-ordered presentence investigations were favorable. If such investigations were not favorable, Docking advised, the trial judge would then allow each defendant to withdraw his "guilty" plea and to proceed to trial. In advising the three defendants in this manner, Docking failed to explain to them the consequences of pleading guilty. Further, Docking failed to understand that the word "plea," as commonly used in the legal system, did not have the same meaning as that word is usually and commonly understood in the Korean language and as was understood by each of the three defendants.

9. On September 5, 1986, in reliance on Docking's recommendations, each of the three defendants plead guilty to the charges against them.

10. On October 6, 1986, four days before the scheduled sentencing hearings, Docking filed with the District Court of Leavenworth County separate motions on behalf of each defendant requesting that each be allowed to withdraw the guilty pleas previously entered. The basis for each motion was that there had been mistakes in translations by both the court's interpreter and the interpreter retained by Docking and that each of the defendants had accordingly failed to understand the terms and conditions of their guilty pleas.

11. On October 10, 1986, the trial judge heard the motions to withdraw guilty pleas. Docking called no witnesses in support of the motions. The trial judge denied each of the motions and sentenced each defendant to the custody of the Secretary of Corrections of the State of Kansas.

12. Subsequent to the sentencings, Docking erroneously informed each of the defendants that they could not appeal the trial judge's rulings on the motions to withdraw guilty pleas.

13. Subsequently, the Attorney General of the United States, through the Immigration and Naturalization Service, issued separate orders to each of the defendants to show cause why, because of their criminal convictions, they should not be deported from the United States pursuant to 8 U.S.C. § 1251. At no time during Docking's representation of the three defendants had he advised any of them that they could be deported from the United States upon being convicted of the charges against them. Further, Docking failed to advise each of the defendants that they had a right to request from the District Court of Leavenworth County a recommendation against deportation pursuant to 8 U.S.C. § 1251(b)(2). Finally, although each of the defendants had informed Docking that they wanted to become American citizens, Docking failed to inform them that criminal convictions might make each of them ineligible for such citizenship pursuant to 8 U.S.C. § 1427.

14. Following the convictions, Docking informed each of the defendants of their right to file habeas corpus petitions. However, Docking erroneously informed each defendant that, because of their confinement, they would have to file pro se petitions. Further, Docking erroneously advised each defendant that such petitions could only be filed in federal court.

15. On December 23, 1987, Chong, with assistance from a so-called "jail-house lawyer" at the Kansas State Penitentiary and without any assistance from Docking, filed a pro se habeas corpus application pursuant to K.S.A. 60–1507 with the District Court of Leavenworth County, seeking release on the grounds of ineffective assistance of counsel.

16. On November 18, 1988, Chang and Kim each filed similar pro se habeas corpus petitions with the District Court of Leavenworth County alleging ineffective assistance of counsel.

17. On December 6, 1988, the District Court of Leavenworth County held a hearing on the habeas corpus petitions. After

hearing testimony and receiving a variety of exhibits, the court found that each of the defendants' federal and state constitutional rights to effective assistance of counsel had been denied. Accordingly, the court sustained each of the petitions and declared each of the convictions to be void.

18. The parties have stipulated to the negligent acts and omissions of Docking. With respect to Docking's representation of Chong, the parties have listed 25 separate negligent acts and omissions on the part of Docking. With respect to Docking's representation of Change, the parties have also listed 25 separate negligent acts and omissions on the part of Docking. Finally, with respect to Docking's representation of Kim, the parties have listed 26 separate negligent acts and omissions on the part of Docking. Although Docking's actions and omissions are similar with respect to each defendant, they are not identical.

19. As a direct and proximate result of Docking's negligence, each of the defendants was incarcerated.

20. As a direct and proximate result of Docking's negligence, each of the defendants was unable to work for approximately 30 months and suffered resulting losses of wages, benefits, and social security contributions.

21. As a direct and proximate result of Docking's negligence, each of the defendants has suffered severe mental anguish, humiliation, pain and suffering, loss of freedom, and emotional distress. Further, each defendant has incurred legal and translation expenses in successfully prosecuting their habeas corpus petitions and in seeking dismissal of their deportation proceedings.

22. At all material times, Docking was an insured of St. Paul under a professional liability insurance policy. The policy provides coverage limits of $100,000 for "[e]ach wrongful act." Further, the policy provides, in pertinent part, as follows:

**Limits of Coverage**

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:

* protected persons;
* claims made or suits brought; or
* persons or organizations making claims or bringing suits.

**Each wrongful act limit.** This is the most we'll pay for all claims that result from a single wrongful act or a series of related wrongful acts.

The policy provides that the term "wrongful acts" shall include "error[s], omission[s] or negligent act[s] committed in the performance of legal or notary services." However, the policy does not define the phrase "series of related wrongful acts."

23. Subsequent to their release from confinement, each of the defendants filed separate legal malpractice actions against Docking. Docking, St. Paul, and the defendants each reached separate agreements allowing each of the defendants to "secure a judgement against Docking for $100,-000.00 in return for a Covenant Not To Execute against any assets other than those provided Docking under the terms of his liability policy."

*Discussion*

St. Paul argues that the amount of coverage provided under the policy at issue is limited to a total of $100,000.00 for the claims of all three defendants. In support of its argument, St. Paul argues that the negligent acts and omissions committed by Docking with respect to all defendants constitute a "series of related wrongful acts." Stated differently, St. Paul asserts that the claims made by Chong, Chang and Kim all resulted from a "series of related wrongful acts."

Defendants, in opposition to St. Paul's argument, claim that they are each entitled to recover $100,000.00 under the terms of the policy. In support of this argument, defendants assert that Docking owed each of them a separate duty of care and that his negligence constituted a separate series of wrongful acts as to each defendant.

As the parties' arguments suggest, the critical issue in this case is the interpretation of the phrase "series of related wrongful acts" as contained in Docking's policy

of insurance. Before analyzing this phrase, however, the court first turns to the general rules for construction of insurance policies.

In *Penalosa Co-op. v. Farmland Mut. Ins. Co.*, 14 Kan.App.2d 321, 789 P.2d 1196 (1990), the Kansas Court of Appeals noted:

> If a dispute arises as to the meaning of the terms chosen by the parties, courts will attempt to determine what the parties intended. To determine this intent, courts will consider the policy as a whole and will examine the language used by the parties, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. (Citations omitted.)
>
> If there is no uncertainty about the meaning of the policy, it will be enforced as written. (Citations omitted.)
>
> If there is uncertainty about the meaning of the policy, courts determine the meaning by applying rules of construction. These rules do not apply unless the court first determines that the policy is ambiguous. A policy is not ambiguous unless, viewing it as a whole, there is genuine uncertainty as to which one of two or more possible meanings is the proper meaning. (Citation omitted.) Ambiguity may not be created by viewing the policy in fragmentary segments. (Citations omitted.) And the rules of construction do not " 'authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' " (Citation omitted.)

*Id.* 14 Kan.App.2d at 323–24, 789 P.2d 1196.

Turning now to the policy at issue, the court finds that the phrase "series of related wrongful acts" is ambiguous. In particular, the use of the term "related," which itself has no accepted legal definition, allows the entire phrase to be construed in many different ways.[3] Notably, a review of the few cases interpreting similar policy language demonstrates that there is a general lack of agreement among the courts on the meaning and clarity of the term "related." *See Gregory v. Home Ins. Co.*, 876 F.2d 602, 605–06 (7th Cir.1989) (court in dicta suggested that the word "related" would include "a very broad range of connections, both causal and logical."); *Arizona Property & Casualty Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451, 456–57 (1987) (holding that the term "related," as used in a professional liability policy, referred only to causal connections); *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 233 Cal.App.3d 1184, 285 Cal.Rptr. 174 (1991) (holding that failure to define term "related" as used in "limits of liability" clause of professional malpractice policy created ambiguity in policy that would be construed in favor of insured); *see also Penalosa*, 14 Kan. App.2d at 327–28, 789 P.2d 1196 (holding that provision of employee dishonesty policy that defined "occurrence" as related acts during policy period was ambiguous). A finding of ambiguity is further supported by a review of Docking's answers to interrogatories in the malpractice actions filed against him by the defendants. Specifically, Docking responded in an initial set of interrogatories that the limits of liability under the policy were "$100,000.00 per person, $300,000.00 per occurrence." Docking later filed a supplemental answer in which he stated that he had been informed by St. Paul that under the policy the limits of liability were "$100,000.00 for each wrongful act and $300,000.00 total limit for all wrongful acts reported in a policy year." Although such responses are not controlling, they certainly suggest that the insured himself was unsure of the meaning of the policy limitations.

 Because the court finds that the term "related" and the phrase "series of related wrongful acts" are ambiguous, the court will construe the policy in the way most favorable to the insured. *Farm Bureau Mut. Ins. Co. v. Old Hickory Casualty Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283

---

**3.** In its reply memorandum, St. Paul recites definitions of the term "related" as found in Black's Law Dictionary and Webster's Ninth New Collegiate Dictionary. A review of these definitions indicates that the term covers an incredibly broad, and certainly subjective, range of connections.

(1991). The court therefore finds that the term "related" as used in the policy at issue should be defined solely in terms of causation. *See Helme*, 735 P.2d at 456; *Bay Cities*, 285 Cal.Rptr. at 177. Further, the court finds that the phrase "series of related wrongful acts" refers only to "multiple, causally connected" negligent acts or omissions.[4] *Helme*, 735 P.2d at 457.

Interpreting the facts of this case in light of the policy provisions, the court finds that the claims of the defendants did not arise out of a "series of related wrongful acts." Rather, the court finds that there were multiple discrete omissions and actions on the part of Docking which resulted in discrete losses to each of the three defendants.[5] *See Continental Casualty Co. v. First Arlington Investment Corp.*, 497 So.2d 726 (Fla.Dist.Ct.App.1986) (holding that the damages to two clients of the same attorney arose from attorney's acts or omissions in separate and distinct professional services that should have been provided to each client). Without engaging in a lengthy review of an attorney's obligations to his clients, the court notes, as have the defendants, that Docking owed separate duties to each of the three defendants. In order to protect the individual interests of Chang, Chong and Kim, "it was necessary for [Docking] to render separate services which were distinct to each of them."[6] *Continental*, 497 So.2d at 728. Accordingly, the court finds that defendants' damages arose out of negligent acts and omissions "in separate and distinct professional services [Docking] provided, or should have provided...." *Id.* The court therefore finds that the defendants are each entitled to recover $100,000.00 under the terms of the policy.

Even if the court were to accept a broader definition of the term "related,", the court would nonetheless reach the same conclusions with respect to the defendants' rights to recover under the policy. In *Gregory*, a case heavily relied upon by St. Paul, the court suggested that the term "related" would cover "a very broad range of connections, both causal and logical."[7] 876 F.2d at 606. Accepting this definition, for purposes of argument, the court finds no "logical" connection between the errors and omissions Docking committed with respect to each of the three defendants. Although the errors and omissions grew out of highly similar factual situations, Docking had a separate duty to each client and was rendering separate services to each. Accordingly, the court finds no "logical" connection between such services for purposes of Docking's insurance policy.

As a final matter, the court notes that defendant Chang has filed a motion entitled "Motion for Garnishment" (Doc. $ 26). In light of the court's findings with respect to the policy and the defendants' rights to recover thereunder, the court finds it unnecessary to grant Chang's motion.

IT IS THEREFORE ORDERED that plaintiff's motion for discharge and enjoinment (Doc. $ 21) is denied.

IT IS FURTHER ORDERED that defendant Chang's motion for garnishment (Doc. $ 26) is denied.

IT IS FURTHER ORDERED that the motions for summary judgment on the cross claims (Doc. $ 32, $ 34, and $ 39) are denied as moot.

---

4. As noted by the *Helme* court, this construction is consistent with cases that have defined "per occurrence" clauses in terms of causative acts. 735 P.2d at 457.

5. For example, Docking's wrongful acts with respect to defendant Chang had no causal connection to Docking's wrongful acts with respect to defendant Kim.

6. Even focusing solely on Docking's advice to each defendant to plead guilty, the court finds that such acts are separate wrongful acts. Although the criminal charges may have arisen out of the same set of events, each defendant clearly was in a different position and arguably had his own set of defenses. Further, each defendant was arguably at a different level with respect to his ability to speak and understand English. In short, each defendant brought a unique set of circumstances with him which should have been considered by Docking in deciding how to advise each defendant.

7. The court notes that the facts of the instant case make it clearly distinguishable from *Gregory*.

IT IS FURTHER ORDERED that this action is hereby dismissed.