2002 OK CIV APP 16

Carol Ann PRICE, Natural Parent of James Trevor Price, Deceased, Plaintiff/Appellee,

and James Townley Price, Natural Parent of James Trevor Price, Deceased, Plaintiff,

v.

MID–CONTINENT CASUALTY COM-PANY, an Oklahoma corporation, Defendant/Appellant.

No. 95,453.

Court of Civil Appeals of Oklahoma, Division No. 3.

Decided Sept. 28, 2001.

Rehearing Denied Oct. 29, 2001.

Certiorari Denied Jan. 8, 2002.

Mike Jones, Alan Souter, Jones Law Office, Bristow, OK, and Bryce Hill, Tulsa, OK, for Plaintiff/Appellee Carol Ann Price.

John A. Gladd, Gail W. Harris, Gladd, Smith & Harris, Tulsa, OK, for Defendant/Appellant.

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶ 1 Mid–Continent Casualty Company was the uninsured/underinsured motorist carrier for Carol Ann Price and her son, Trevor. Trevor was killed in an automobile accident in 1987. A wrongful death trial resulted in a judgment in favor of the Prices for $750,000.[1] Thereafter, Mid–Continent tendered, and Price accepted, a check for $10,000 on Trevor's UM/UIM policy which represented the policy limit on his car, the one he was driving at the time of the accident. However, Price rejected a $10,000 tender on her own policy, claiming she was entitled to the $250,000 policy limit. When the parties were unable to resolve their difference, Price filed a bad faith claim against Mid–Continent. The trial court granted summary judgment in favor of Price which Mid–Continent appealed to this Court. In a 2–1 decision, Division III held that "the" automobile did not mean "any" automobile and that the proper UM limit was therefore $250,000. Certiorari was denied by the Oklahoma Supreme Court in a 6–3 vote. Within five weeks after mandate, Mid–Continent

tendered a check for $365,398, representing the $250,000 policy limit plus interest. The bad faith claim then proceeded to trial. The jury entered a verdict in favor of Price finding she suffered $60,000 in actual damages. It also found that Mid–Continent intentionally and with malice breached its duty to deal fairly and in good faith with Price and awarded punitive damages against Mid–Continent in the amount $500,000. We reverse.

¶ 2 The claims of the parties were reflected in instructions to the jury. Carol Price claimed:

That Defendant Mid–Continent Casualty Company failed to properly and timely investigate, evaluate and pay Carol Price the $250,000 due under her insurance policy on her Volvo, and that it was unreasonable for Mid–Continent to take the position that only $10,000 was due under the Special Automobile Limits Endorsement to the Volvo policy, in violation of Oklahoma law and Carol Price's insurance policy.

That Mid–Continent Casualty's failure to properly and timely investigate, evaluate and pay Carol Price's claim is a violation of its duty of good faith and fair dealing under Oklahoma law and the insurance contract, and that Plaintiff has suffered damages.

That Mid–Continent Casualty's conduct towards Carol Price was in reckless disregard of her rights, malicious and intentional, and that Plaintiff is therefore entitled to a judgment for punitive damages against Mid–Continent Casualty to deter Mid–Continent Casualty and others similarly situated from engaging in like conduct.

Mid–Continent Casualty Company claimed:

That there existed a legitimate dispute in regard to the amount of uninsured motorist coverage on the Carol Price vehicle, that is, $250,000 versus $10,000, per the terms of the contract and the intent of the parties.

---

**1.** The natural father, James Townley Price and mother, Carol Ann Price, were divorced at the time of their son's death. Consequently, Mr. Price was a party to the wrongful death lawsuit, but was dismissed from the bad faith lawsuit because he was not a signatory to the insurance contracts and because their son lived with the mother, Carol Ann Price.

That it was not bad faith to request this Court or the Appeals Court for a judicial determination of coverage.

That the appeal was not an attempt to delay payment, and that Plaintiff dismissed her bad faith claim without prejudice to refiling so that Mid–Continent could appeal.

That it was not Mid–Continent's intent to provide $250,000 coverage to a teenage driver.

¶ 3 With respect to punitive damages, the jury was instructed that Price had the burden of proving that Mid–Continent recklessly disregarded its duty to deal fairly and in good faith with her and/or intentionally and with malice breached its duty and that she had to prove these allegations by clear and convincing evidence.

¶ 4 The essence of the dispute was whether Price's UM policy covered her son driving his own car at the full UM limit of $250,000 or whether the lower limit of $10,000 was applicable. The clause at issue stated:

It is agreed that with respect to accidents which take place while the automobile is being operated by a male or female person under 25 years of age, the limits of liability stated in the declarations for Bodily Injury Liability and Property Damage Liability, are amended to read as follows:

\* \* \* \* \* \* \* \* \*

$10,000/20,000 Uninsured Motorist.

¶ 5 Price's son Trevor was a college student, under the age of twenty-five and resided with her.

¶ 6 The Court of Civil Appeals, in a 2 to 1 vote, held that the $10,000 limit was not applicable. That decision is now final. As earlier stated, soon after mandate, Mid–Continent paid Price $365,398 representing the $250,000 and interest.

¶ 7 " . . . [T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, . . . ." *McCorkle v. Great Atlantic Insurance Company*, 1981 OK 128, 637 P.2d 583, 587. Conflicting evidence regarding the reasonableness of the conduct is a " . . . question to be determined by the trier of fact by a consideration of the circumstances in each case." Id.

¶ 8 In the case at bar, Mid–Continent agreed to be bound by the verdict in the wrongful death action and when the Prices were granted judgment, tendered payment. The dispute arose because of the different interpretations of the insurance contract.

We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum in not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Christian v. American Home Assurance Corporation,* 1977 OK 141, 577 P.2d 899.

¶ 9 Price's claim that Mid–Continent did not properly investigate and evaluate the case does not apply to the facts of this case. Mid–Continent disagreed with the Price's interpretation of the contract which is a legal, not a factual, question.

¶ 10 Cases supporting a finding of bad faith include: *Christian v. American Home Assurance Company,* 1977 OK 141, 577 P.2d 899 (discovery at trial that insurance company did not have a legitimate ground for refusing to pay the claim); *McCorkle v. Great Atlantic Insurance Company,* 1981 OK 128, 637 P.2d 583 (insurance company's investigation of house fire damages failed to include water damage, allowances for plumbing repair, exposing and inspecting electrical wiring, replace for broken windows or replacement for sheetrock in several rooms); *Newport v. USAA,* 2000 OK 59, 11 P.3d 190 (offers were below the amount the insurance company's estimates of damage); *Buzzard v. Farmers Insurance Company,* 1991 OK 127, 824 P.2d 1105 (no investigation made into the cause of the accident or liability limits of primary insurer and no settlement offered). Because Mid–Continent agreed to be bound by the verdict in the wrongful death action, investigation and evaluation

were not pertinent to its liability for payment of the uninsured motorist portion.

¶ 11 Price also claimed that Mid–Continent's position, that it only owed $10,000 on the policy, was unreasonable. However, in its opinion in case number 86,-666, Division III stated: "It is the interpretation of the third endorsement [endorsement quoted above] which forms the issue for us to decide." Contract interpretation is always the domain of the courts.[2] "As a general rule, the construction and effect of a written contract of insurance is a matter of law to be determined by the court. If the facts upon which a beneficiary relies to recover on the policy are admitted, then it is for the court to decide whether they come within the terms of the policy, and such determination may be made pursuant to a motion for summary judgment." *Goforth v. Franklin Life Insurance Company*, 202 Kan. 413, 449 P.2d 477 (1969)(syllabus by the court, ¶ 1). "The construction of an insurance contract is a matter of law to be determined by the court." *Nash v. Adkins*, 11 Kan.App.2d 326, 720 P.2d 1129 (1986)(syllabus by the court ¶ 1). Finally, the "interpretation of a contract is a question of law for the court where the language used is unambiguous." *State ex rel. Department of Highways v. Martin*, 1977 OK CIV APP 57, 572 P.2d 611, 613.

¶ 12 Absent a showing that Mid–Continent's request for judicial interpretation of the contract was frivolous or dilatory or otherwise motivated by bad intent, the exercise of such right cannot form the basis of unreasonableness or bad faith.[3]

¶ 13 We cannot allow a verdict to stand which is contrary to law. "In passing upon alleged error in an action at law, we are committed to the rule that: where there is any competent evidence or reasonable inference from circumstances reasonably tending

to establish a cause of action or to sustain the jury's verdict and judgment based thereon, such judgment will be sustained on appeal unless shown to be contrary to law." *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174, 176.

¶ 14 Mid–Continent also raised allegations of error with respect to the conduct of the trial, none of which rise to the level of reversible error. Because we reverse the judgment and vacate the award of damages, we do not address those issues.

¶ 15 For these reasons, we REVERSE the judgment entered on the jury's verdict.

GARRETT, J., concurs.

CAROL M. HANSEN, C.J., dissents with separate opinion.

CAROL M. HANSEN, Chief Judge, dissenting:

¶ 1 I must respectfully dissent. My reasons are both procedural and substantive. First, neither Mid–Continent in its Brief in Chief, nor the majority in reversing the trial court's judgment, sets forth with requisite specificity what the trial court did that would constitute reversible error.

¶ 2 Mid–Continent asserts, in the most general terms, "[t]he trial court erred in permitting Plaintiffs ... to base a claim for bad faith on delay of payment because Mid–Continent had a legitimate dispute and was entitled to exhaust its appeals on the question of law." Mid–Continent, however, fails to direct this court to any trial court ruling or jury instruction to which it objected and thereby preserved error for appeal.

¶ 3 It is elemental in our law that the trial court must always be afforded the opportunity to correct its own errors before those errors can be made the subject of an appeal. *Senter v. Senter*, 1966 OK 131, 420 P.2d 879.

---

2. The fact that the one issue appeal about the contract interpretation was decided 2–1 bolsters Mid–Continent's position that its position was reasonable. However, we note that even a 3–0 vote on an issue would not mean that the trial position or appeal was unreasonable.

3. Price claims in her brief: "Plaintiff did not allege that Defendant's resort to a judicial forum was, in and of itself, bad faith, contrary to Defendant's assertion in its Proposition I. Rather, Defendant's appeal of the motion for partial sum-

mary judgment further shows its unreasonable and bad faith failure to investigate, evaluate and pay Plaintiff's claim following the 1992 trial." In essence, Price claims that the decision to appeal an adverse summary judgment and seek review by the Oklahoma Supreme Court was bad faith. There was no evidence that these decisions to appeal were motivated by malice or ill will. Without evidence to the contrary, the right to submit an insurance dispute to a judicial forum certainly includes the right of appeal and to complete the judicial process to a final judgment.

In the absence of *specific* allegations by Mid–Continent as to how the trial court erred, this Court is precluded from determining if any trial court error was preserved for appellate review.

¶ 4 More particularly, if Mid–Continent, by alleging error in permitting Price to base a claim on bad faith in delaying payment, is inferring trial court error in instructing the jury on that theory, it is barred from asserting that error by Supreme Court Rule 1.11(e)(1). Rule 1.11(e)(1) directs that parties complaining of instructions given or refused must, *inter alia,* specify the instruction in controversy. Also, despite Mid–Continent's failure to even refer to any instruction, the Majority, I believe improperly, frames the issues it deems relevant by use of the trial court's instructions.

¶ 5 Notwithstanding Mid–Continent's omission of trial court action justifying reversal, the Majority rationalizes reversal by stating it "cannot allow a verdict to stand which is contrary to law." In support of this conclusion, the Majority quotes the following rule from *Silk v. Phillips Petroleum Co.,* 1988 OK 93, 760 P.2d 174:

> In passing upon alleged error in an action at law, we are committed to the rule that: where there is any competent evidence or reasonable inference from circumstances reasonably tending to establish a cause of action or to sustain the jury's verdict and judgment based there, such judgment will be sustained on appeal unless shown to be contrary to law. (Citations omitted).

¶ 6 While the foregoing rule is unquestionably correct, immediately preceding it the *Silk* Court states:

> We address first Phillips' claim that the trial court erred in overruling Phillips' demurrer to Silk's evidence and its request for directed verdict at the conclusion of Silk's case in chief.

¶ 7 Thus, even in the case cited by the Majority as authority for its action, the Supreme Court had before it for review specific allegations of trial court error. Mid–Continent has failed to meet its burden as appellant to provide this Court with such reviewable error on the question of Price's bad faith claim. I would therefore decline to rule on that issue.

¶ 8 In my view, the Majority also incorrectly applies the substance of the law. The majority's quote from *Christian,* the seminal Oklahoma bad faith holding, recognizes "there can be disagreements between insurer and insured on a variety of matters such as insurable interest extent of coverage, cause of loss, amount of loss or breach of policy conditions." Surely then, disagreements as to interpretation of insurance contracts, as here, was within the contemplation of the *Christian* Court. *Christian* did hold that resort to judicial forum by the insurer was not *per se* bad faith, but also held that liability may be imposed where there was a clear showing the insurer unreasonably withheld payment of its insureds' claims.

¶ 9 Later, in *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, the Supreme Court, reexamining *Christian* and its progeny, held the decisive question in a bad faith case was whether the insurer had a good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy. The Court went on to note that while an insurer was entitled to have any dispute concerning the reasonableness settled by a jury:

> If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case. (Citations omitted).

¶ 10 Thus, where there is conflicting evidence, the question of whether there was a legitimate dispute between insured and insurer is one for the jury. I find there is conflicting evidence here. The record reflects not even all members of Mid–Continent's executive review committee agreed it had a reasonable argument for its position on the contested policy language. There was evidence that someone at Mid–Continent's office made a preliminary determination fairly shortly after notice of claim that the policy limits were not limited by the under 25 age exclusion. This was indicated on the loss notice by marking through the $10,000/20,000 limits and handwriting $250,000/500,000. Mid–Continent's own witness testified it resolves ambiguity in favor of its insureds, but

contended there was no doubt on Mid–Continent's part about what the exclusion clause meant. This notwithstanding evidence that there was not unanimity among Mid–Continent's own executives concerning what the provision language meant.

¶ 11 I would find the foregoing evidence is sufficient for the jury to have inferred that Mid–Continent's purpose was to offer a settlement that was below its own original valuation with hopes that Price would accept it, or by delay to force a settlement for less than policy limits despite its professed practice of resolving ambiguity in favor of its insureds. These inferences would support a jury finding that Mid–Continent's actions in disputing the policy interpretation was not legitimate, and in turn that Mid–Continent was dealing with its insured, Price, in good faith.

¶ 12 A jury verdict is conclusive as to all conflicting evidence, and where there is competent evidence reasonably supporting that verdict should not be disturbed on appeal. *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55, 11 P.3d 162. There is competent evidence to support the jury verdict and judgment here. That judgment should be affirmed.