No. 87,005

GALE LIGGATT, *Plaintiff/Appellant*, v. EMPLOYERS MUTUAL CASUALTY COMPANY, *Defendant/Appellee*, and JANET HATHAWAY, *Plaintiff/Appellant*, v. GALE LIGGATT, *Defendant/Appellant*, and EMPLOYERS MUTUAL CASUALTY COMPANY, *Garnishee/Appellee*.

(46 P.3d 1120)

Opinion filed May 31, 2002.

*Michael W. Murphy*, of Galloway, Wiegers & Heeney, PA, of Marysville, argued the cause and was on the briefs for appellant Gale Liggatt.

*William J. Pauzauskie*, of Oyler & Pauzauskie, of Topeka, was on the brief for appellant Janet Hathaway.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, LLP., argued the cause and was on the brief for appellee Employers Mutual Casualty Company.

The opinion of the court was delivered by

DAVIS, J.: Passenger Janet Hathaway filed a tort action against driver Gale Liggatt for injuries she sustained in a one vehicle motorcycle accident. Liggatt's insurer, Employers Mutual Casualty Company (EMC), denied coverage and refused to defend based upon a specific policy exclusion for a vehicle with less than four wheels. Hathaway's garnishment action against EMC based upon a consent judgment and Liggatt's breach of contract action against EMC for attorney fees expended in defending Hathaway's tort action both failed on summary judgment. The trial court granted summary judgment to EMC, concluding that the clearly expressed intent of the parties and not the reasonable expectations of the insured controlled. We agree and affirm.

Hathaway was a passenger on a three-wheeled vehicle operated by Liggatt. She was severely injured when the vehicle ran off the road. Hathaway was the owner of the vehicle. She filed suit against Liggatt for personal injuries she suffered in the single vehicle accident. EMC refused to defend the action based upon its determination that its policy of insurance covering Liggatt's vehicle, which also happened to be a motorcycle, did not provide coverage for his use of Liggatt's three-wheeled vehicle. Liggatt was defended under reservation of rights by an attorney retained by his homeowners insurance company.

After notice to EMC, a consent judgment was entered against Liggatt in favor of Hathaway for $676,846.44. Within the same action, Hathaway obtained a garnishment to collect her judgment against EMC, and Liggatt filed a separate breach of contract action against EMC to recover his attorney fees in defending Hathaway's

action against him. The two cases were consolidated, and the trial court entered summary judgment for EMC and dismissed Liggatt's claim for attorney fees.

We are called upon to review the decision of the trial court in its interpretation of the policy of insurance issued by EMC to Liggatt. The interpretation of a written instrument is a question of law, and regardless of the construction given to a written instrument by the trial court, the appellate court may construe the instrument and determine its effect. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998). However, because we agree with the trial court, its decision and the appellant's response identify and clarify the issues we must resolve in this opinion. For that reason we quote at length from the trial court's memorandum decision.

Trial Court's Ruling

The trial court ruled as follows:

"The court takes judicial notice of the policy in question. It is a standard insurance contract with endorsements changing parts of the policy. The Policy Declarations clearly provide, in large letters, that:

" 'COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN'

"The continuation page of the Policy Declarations captioned 'CYCLE DESCRIPTION/COVERAGE,' describes a 1984 HD motorcycle, Id. # 1HD1EC120EY-257987, as the only vehicle covered under the policy. Each element of coverage (bodily injury liability, property damage liability, etc.) is itemized, for a total premium of $265.00.

"The base Policy is contained in form PP0001, pages 1 through and including 11. DEFINITIONS are contained on page 1 thereof and define 'Your Covered Auto' as 'Any vehicle shown in the Declarations.' (Paragraph J) The only change in that definition is contained in Endorsement Form PP0323. Form PP0323 is a MISCELLANEOUS TYPE VEHICLE ENDORSEMENT, consisting of 3 pages. It provides, in large type, conspicuously placed at the top of page 1:

'THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.'

"Page 1 of this endorsement form further provides:

'This coverage is subject to all the provisions of the policy with respect to the miscellaneous type vehicles and coverages described in the Schedule on the Declarations except as modified as follows:

No modifications are shown in that schedule of vehicles. Policy DEFINITIONS contained on page 1 of this endorsement change the definition of 'Your Covered Auto' as follows:

'A. For the purpose of the coverage provided by this endorsement, "miscellaneous type vehicle" means a motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart.

'B. the definition of "your covered vehicle" is replaced by the following:

'Your covered auto' means:

1. Any "miscellaneous type vehicle" shown in the Schedule or in the Declarations.

The only coverage defined under this endorsement for any vehicle not shown on the Declarations or Schedule relates to vehicles acquired by the Insured after inception of the policy and vehicles used as a temporary substitute for the insured vehicle while it is under repair. The accident vehicle was not being used by Insured as a substitute for his motorcycle within the meaning of that definition.

"EMC's contractual obligation for Liability Coverage is set forth on Page 2 of the base policy. The insuring Agreement therein states:

'We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the insured. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. WE HAVE NO DUTY TO DEFEND ANY SUIT OR SETTLE ANY CLAIM FOR BODILY INJURY OR PROPERTY DAMAGE NOT COVERED UNDER THIS POLICY.' (Emphasis supplied.)' "

The only change made to the Insuring Agreement is contained in the Amendment or Policy Provisions form PP0156. That change simply removes the reference to prejudgment interest from the Insuring Agreement as set forth above by eliminating the second full sentence, but retains the remainder of that clause.

"The foregoing obligation of EMC for Liability Coverage is subject to the Exclusions specified on pages 2 and 3 of the base policy. The relevant Exclusion with respect to the issue in these cases is contained in paragraph B.1. on page 3, as follows:

'B. We do not provide Liability Coverage for ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.'

The only change made to the B.1. Exclusion of the base policy is contained on page 2 of the Miscellaneous Type Vehicle Endorsement form (PP0323), which is as follows:

'B. The Exclusions Section is amended as follows:

1. Exclusion B. 1. is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any motorized vehicle having fewer than four wheels. However, this

exclusion does not apply to a motorized vehicle having fewer than four wheels if it is insured for Liability Coverage under this endorsement.' "

The trial court had previously noted that the parties did not dispute that the motorcycle involved in the accident was not owned by Liggatt and that the vehicle was not a replacement or substitute vehicle under Liggatt's policy with EMC. The court additionally noted that "[t]here is no question that the accident vehicle had fewer than four wheels." The question for the trial court was whether the accident "arose out of the ownership, maintenance or use of a motorized vehicle having fewer than four wheels which was excluded from coverage under the terms of EMC's policy."

## Hathaway's Response

Hathaway acknowledged that standing alone, the B.1. exclusion is unambiguous. However, she asserts that the vehicle described in the declarations is a motorcycle and the exclusion becomes patently ambiguous because it is in conflict with the specifically described vehicle in the declarations and is, therefore, void. Her contention appears to be that the policy would have covered a four-wheel vehicle and that because coverage extends to such four-wheel vehicles, it would be reasonable to assume that coverage would also extend to a vehicle with fewer than four wheels. She further contends that because of excessive amendments to the base policy, including amendments which are not particularly relevant to the issue in this case, the policy as a whole is incomprehensible.

## Trial Court's Response and Decision

In disagreeing with Hathaway's response, the trial court noted that the only way to reach the conclusion urged by Hathaway would be to completely read the exclusion for the use of vehicles with fewer than four wheels out of the policy. The trial court further concluded:

"The court does not believe that any particular expertise is required to understand that amendment provisions contained in the endorsements to a policy, under like headings to provisions in the base policy being amended, are in fact limited in scope to the provision so amended. Headings in the subject policy are clearly marked in capital letters. As previously noted, the only amendment to the pertinent exclusion is contained in the Miscellaneous Type Vehicle Endorsement and

it clearly sets forth that it changes the policy and directs the Insured to read it carefully.

. . . .

"Here, the intent of EMC and Insured is clear. The policy was to provide liability coverage to Insured for the operation of his two wheeled motorcycle. Exclusion B.1. as amended in the Miscellaneous Type Vehicle Endorsement, clearly excepts motorized vehicles having fewer than four wheels from Exclusion B.1. if it is insured for such coverage under the Endorsement. Even though the policy is fragmented, it is nonetheless clear from a reading of the policy as a whole, that there was no intent to provide coverage to motorized vehicles having fewer than four wheels owned by strangers to the contract unless used by the Insured as a temporary substitute while his insured vehicle is under repair. The language of an exclusionary clause in an insurance policy must be afforded its plain, ordinary meaning. Courts should not strain to create an ambiguity where, in common sense, there is none. *Newton v. Nicholas*, 20 Kan. App. 2d 335, Syl. 3. Kansas law does not require motor vehicle insurance policies to cover the use of any vehicle which is not described in the policy, including borrowed vehicles. Liability coverage is not required to follow a named person from vehicle to vehicle. Instead, policies are required to designate those vehicles that are covered, and all operators of the designated vehicle are required to be covered, as long as they have the owner's consent to operate the vehicle. K.S.A. 40-3107(a) and (b)."

Based upon the above conclusions and further authority advanced by the trial court, the court concluded that EMC had no duty to defend and/or indemnify Liggatt against the legal proceedings brought by Hathaway. The accident was not a covered occurrence but was clearly and unambiguously excluded from coverage under EMC's policy.

On appeal, Hathaway and Liggatt identify 14 issues, all of which are either directly or indirectly based upon their contention that the policy as a whole is ambiguous, a contention which was rejected by the trial court. We address the issues raised but emphasize that we agree with the trial court's opinion that the insurance contract in this case is not ambiguous.

### Ambiguity

Hathaway argues the trial court erred in finding that his insurance contract with EMC is not ambiguous. "An appellate court's review, when construing a written contract on uncontested facts, is de novo. [Citation omitted.]" *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1010, 894 P.2d 260 (1995).

Whether a written instrument is ambiguous is a matter of law subject to de novo review. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998).

The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself. See *Marquis*, 265 Kan. at 324. A party to a contract has a duty to read the contract before signing it, and the failure to read a contract does not make the contract less binding. *Miner v. Farm Bur. Mut. Ins. Co., Inc.*, 17 Kan. App. 2d 598, 609, 841 P.2d 1093 (1992), *rev. denied* 252 Kan. 1092 (1993). Ambiguity exists if the contract contains provisions or language of doubtful or conflicting meaning. *Marquis*, 265 Kan. at 324. Put another way: "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992). Before a contract is determined to be ambiguous, the language must be given a fair, reasonable, and practical construction. *Marquis*, 265 Kan. at 324. The court in *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998), described the test as requiring a determination of "not what the insurer intends to language to mean, but what a reasonably prudent insured would understand the language to mean."

If the meaning is ambiguous, the contract must be construed against the drafter. *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 23, 804 P.2d 1374 (1991) ("In construing contracts, an ambiguity in the language of the contract will be strictly construed against the party who drafted the provision."). Alternatively, a finding of ambiguity was described as follows: "If the meaning is not stated clearly, and a reasonable person in the insured's position would have understood the words of the policy to mean something other than what the insurer intended, that understanding will control." *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 324, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990).

EMC's contract with Liggatt begins with two pages of policy declarations. The policy covers Liggatt's 1984 Honda motorcycle, identification number 1HD1EC120EY257987. The policy declarations incorporate eight forms and endorsements.

The main document incorporated is the base policy, PP 00 01. Coverage is set forth in paragraph A:

"A. We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the 'insured.' We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for 'bodily injury' or 'property damage' not covered under this policy."

There are a number of exclusions to the basic coverage found in the base policy, including:

"B. We do not provide Liability Coverage for the ownership, maintenance or use of:
   "1. Any motorized vehicle having fewer than four wheels."

The above language is amended by form PP 03 23, which has two headings. The first heading reads as follows: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The second heading reads as follows: "MISCELLANEOUS TYPE VEHICLE ENDORSEMENT." The amendment is as follows:

"B. The Exclusions Section is amended as follows:
   1. Exclusion B.1. is replaced by the following:
      We do not provide Liability Coverage for the ownership, maintenance or use of any motorized vehicle having fewer than four wheels. However, this exclusion (B.1.) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Liability Coverage under this endorsement."

The above language excludes coverage from loss arising out of an accident involving a vehicle with fewer than four wheels unless that vehicle is the one specifically insured by the insurance contract.

The accident in this case did not involve the vehicle specifically named in the insurance policy. Further, the vehicle involved in the accident had fewer than four wheels.

Kansas statutes do not require liability coverage to follow a named person from vehicle to vehicle. See K.S.A. 40-3107(a),(b). Hathaway concedes this point. Kansas law requires a policy of motor vehicle liability insurance to identify the particular vehicles covered, K.S.A. 40-3107(a), and to designate the owner and any other person using the identified vehicles with express or implied consent, K.S.A. 40-3107(b). The coverage for Hathaway's injury is purely a matter of contract.

Hathaway fails to make a credible argument on appeal that the contract is ambiguous. As the trial court pointed out, "[t]o reach the conclusion urged by [Hathaway], a person would have to completely read the exclusion for the use of vehicles with fewer than four wheels out of the policy." Hathaway fails to suggest an alternative, reasonable interpretation of the contract that makes EMC liable for the injuries in this case.

Unless there is a finding that an insurance policy is ambiguous, the reasonable expectations doctrine does *not* permit the court to reform the unambiguous meaning of the contract. "When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made." *Catholic Diocese of Dodge City*, 251 Kan. at 693.

Hathaway attempts to point out ambiguity in the exclusion, but fails because it is not a reasonable interpretation of the exclusion. Hathaway argues the ordinary Kansan could interpret the amendment as follows: "However, this exclusion (B.1.) does not apply to a motorized vehicle having fewer than four wheels if it *a motorcycle* is insured for Liability Coverage under this [MISCELLANEOUS TYPE VEHICLE] endorsement." Read in this way, the under four-wheel exclusion is always inapplicable if the specifically named vehicle itself has fewer than four wheels. Such an interpretation is unreasonable.

Liggatt argues the ordinary Kansan would simply strike out "it." However, "it" refers to the motor vehicle excluded from coverage in the first sentence. The second sentence which begins with "however" is a limited exception to the general exclusion, and only applies if the vehicle specifically named in the policy is the vehicle involved in the accident. Hathaway argues the ordinary Kansan

would ignore "it." Read in this way, the exception to the general exclusion becomes unlimited and eviscerates the exclusion. The contract must first be given a fair, reasonable, and practical construction. See *Marquis,* 265 Kan. at 324. Hathaway's suggested reading of the amended exclusion is unreasonable and therefore cannot provide a basis for concluding that the exclusion is ambiguous.

## Absurd Results

Hathaway argues that the trial court's interpretation of the contract "leads to absurd results," because nonowned motorcycles are excluded, while nonowned vehicles with four wheels are covered. Hathaway cites *Regional Bank of Colo. v. St. Paul Fire & Marine,* 35 F.3d 494, 498 (10th Cir. 1994), and this court's summary of the *Regional Bank* decision in *Associated Wholesale Grocers, Inc. v. Americold Corp,* 261 Kan. 806, 825, 934 P.2d 65 (1997). *Regional Bank* can be distinguished from the present case. The *Regional Bank* court first established that Colorado law would accept the application of a version of the reasonable expectations doctrine regardless of ambiguity. *Regional Bank,* 35 F.3d at 497 ("We believe that the Colorado Supreme Court would apply the rule of reasonable expectations in construing the terms of the policy here, regardless of whether or not the policy was found to be ambiguous."). Hathaway concludes without explanation that the ambiguity in this case is similar to that found in *Regional Bank.* Her argument fails to acknowledge that no ambiguity exists in the policy exclusion here, whereas ambiguity existed in *Regional Bank.*

"While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as a 'pollution.' It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable." 35 F.3d at 498.

Thus, *Regional Bank* fails to support Liggatt's argument.

Hathaway argues the definition of "insured," which is also amended by form PP 03 23, is beyond the comprehension of an ordinary Kansan. This argument misses the point. Regardless of the definition of "insured," the policy excludes coverage in cases of nonowned vehicles with fewer than four wheels. Hathaway argues it is absurd to suggest an ordinary Kansas would look up the word "insured" in the insurance policy. However, Hathaway fails to make clear what is absurd about reading the exclusions and the amendments affecting the exclusion section in order to determine liability.

To support her argument, Hathaway cites *Ferguson v. Phoenix Assurance Co,* 189 Kan. 459, 370 P.2d 379 (1962), for the proposition that an "exclusion hidden in a definition is unenforceable." The contrast between *Ferguson* and this present case is instructive. As *Ferguson* advises, an insurer should specify policy exclusions within a section of the policy clearly marked as an exclusion section. See 189 Kan. at 471. The exclusion at issue in the present case was not hidden but was incorporated under the exclusion section.

## Reasonable Expectations and Reformation

Hathaway argues the doctrine of reasonable expectations should make EMC liable for the accident causing her injuries. Before applying the doctrine of reasonable expectations there must be a finding that the written instrument being interpreted is ambiguous. The trial court was correct in citing *Penalosa* for the proposition that ambiguity is a condition precedent to the application of the reasonable expectations doctrine. "If there is no uncertainty about the meaning of the policy, it will be enforced as written." 14 Kan. App. 2d at 323. Assuming ambiguity, *Penalosa* provides two alternatives for interpreting the ambiguous contract: (1) A liberal construction in a way most favorable to the insured and (2) an interpretation consistent with the reasonable expectations of the insured. 14 Kan. App. 2d at 324. Consistent with the trial court's decision, the reasonable expectations of a party to a contract cannot be used to modify unambiguous contractual provisions.

Hathaway argues that a contract may be reformed to meet the reasonable expectations of the insured. However, Hathaway fails

to cite any facts which would support reformation. Contract reformation is an equitable remedy available to correct mutual mistakes of fact or fraud. Black's Law Dictionary 1285 (7th ed. 1999); see *Conner v. Koch Oil Co.*, 245 Kan. 250, 254, 777 P.2d 821 (1989).

The American Jurisprudence encyclopedia describes the remedy of reformation as follows:

" 'Reformation' is that remedy by means of which a written instrument is made or construed to express or conform to the real intention of the parties, when some error or mistake has been committed. A reformation occurs when a court determines an instrument does not reflect the terms intended by the parties to it and then revises the terms written in the instrument to reflect the intent of the parties. Reformation is based on the premise that the parties had reached an agreement concerning the instrument, but while reducing their agreement to written form, and as the result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be the expression of the actual agreement of the parties. . . .

. . . .

"In granting reformation, a court merely revises a writing to express the parties' prior agreement. Reformation recognizes that for one reason or another, written contracts do not always accurately reflect the parties' antecedent agreement. In reforming an instrument, a court does not change the agreement between he parties, but changes the drafted instrument to conform to the real agreement. Courts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and foist upon the parties a contract they never made. Accordingly, by reformation, a court is not making a new contract but, rather, gives effect to the contract which the parties in fact made but which by reason of mistake was not expressed in the writing executed by them." 66 Am. Jur. 2d, Reformation of Instruments § 1, pp. 226-27.

There is no evidence to suggest that the contract of insurance between EMC and Liggatt was the result of mutual mistake or fraud. Reformation in accordance with the reasonable expectations of the insured is not a remedy available under the facts of this case.

## Jury Trial

Hathaway argues the district court erred in refusing to grant a jury trial. It is established law in Kansas that the interpretation of a written instrument is generally a question of law exclusively for the court and not a question for the jury. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

Hathaway also argues the trial court failed to use an advisory jury. The decision whether to use an advisory jury is within the discretion of the court. *State ex rel. Miller v. Richardson,* 229 Kan. 234, 241, 623 P.2d 1317 (1981).

The Kansas Rules of Civil Procedure allow for the court to use advisory juries:

"*Advisory jury and trial by consent.* In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or (except in actions against the state when a statute of the state provides for trial without a jury) the court, with the consent of all parties, may order a trial with a jury whose verdict shall have the same effect as if trial by jury had been a matter of right." K.S.A. 60-239(c).

Hathaway argues the trial court erred in failing to use an advisory jury, relying on what he claims to be the great educational disparity between lawyers and judges on the one hand and ordinary Kansans on the other hand. Hathaway rests her argument on the statistics she attempted to introduce at trial showing the educational level of the typical Kansan. She argues an advisory jury would better reflect the ordinary Kansan.

Hathaway's argument ignores established law in this state that the proper interpretation of a contract is a question of law for this court to decide. Moreover, we have concluded that there is no ambiguity in the applicable policy exclusion. Thus, there is no reason to believe an ordinary Kansan would have interpreted the clear language of the policy any differently than a judge would have interpreted the same language. The trial court did not abuse its discretion in denying Hathaway's request for an advisory jury.

Exclusion of Other Insurance Policy Provisions

Hathaway argues the trial court erred in failing to consider the language used by another insurance company, *viz.,* the Dairyland policy which did not limit coverage to four-wheeled motor vehicles. Had Liggatt been covered by the Dairyland policy, Hathaway's injuries would have been covered. Conceding EMC was not required by statute to offer coverage for the accident that occurred in this case, Hathaway suggests EMC had a duty to put its insured on notice about the lack of coverage. Hathaway asks this court to

consider K.S.A. 2001 Supp. 50-639(c), which is a consumer protection law. K.S.A. 2001 Supp. 50-639(c) allows a supplier to limit the supplier's implied warranty of merchantability and fitness for a particular purpose only after specifically informing the consumer of any defects. Hathaway argues the same requirement should be applied to K.S.A. 40-284.

We have determined that the trial court was correct in concluding that the policy before this court is not ambiguous. It necessarily follows that the clear language of the exclusion is to be enforced as written. Hathaway concedes that the mandatory insurance coverage laws of this state do not require coverage for claims such as made in this case. It is therefore unclear how a contract excluding such coverage could be defective under 50-639(c) of the Consumer Protection Act. Moreover, the exclusion applicable in this case, given the only reasonable interpretation available, clearly notified Liggatt that EMC did not cover the injuries sustained by Hathaway. The trial court did not err in excluding other insurance policies.

Affirmed.