(142 P.3d 321)
No. 94,628

JOSEPH J. FIORELLA and CARLA FIORELLA, *Appellants*, v. TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, *et al.*, *Appellees*.

Opin-
ion filed September 15, 2006.

*Joseph R. Borich III*, of Overland Park, and *Thomas Francis Sullivan*, of Leawood, for appellants.

*Dale L. Beckerman*, of Deacy & Deacy, LLP, of Kansas City, Missouri, for appellee.

Before RULON, C.J., McANANY, J., and KNUDSON, S.J.

McANANY, J.: Joseph M. Fiorella was insured under an auto policy, a homeowner's policy, and an umbrella policy issued by Safeco Insurance Company. In 1995, Fiorella changed carriers and obtained auto, homeowner's, and umbrella coverage through Phoenix Insurance Company, an entity owned and operated by The Travelers Insurance Company. The Phoenix umbrella policy, identified as the "Personal Liability Umbrella Supplement" to the homeowner's policy, insured all automobiles, recreational vehicles, watercraft, and premises owned by Fiorella. The Phoenix umbrella policy made no mention of uninsured motorist coverage (UM) or underinsured motorist coverage (UIM).

In 1998, Phoenix issued a new form of umbrella policy that explicitly excluded UM and UIM coverage. However, the pre-1998 form of Fiorella's policy was in effect at the time of Fiorella's accident in January 1999. .

In January 1999, Fiorella sustained serious injuries in an automobile accident due to the fault of Troy Deaton, an 18-year-old

high school student who was insured under an auto insurance policy issued by State Farm Insurance Company with a liability coverage limit of $100,000.

At the time of the accident, Fiorella's Phoenix auto policy had a liability limit of $500,000. The Phoenix auto policy also provided UM and UIM coverage, as well as personal injury protection (PIP) and medical pay benefits. In addition, Fiorella had in effect his Phoenix homeowner's policy. That policy provided liability coverage up to $300,000 per occurrence.

Liability coverage under the Phoenix umbrella policy dovetailed with the auto and homeowner's policies. The umbrella policy applied to auto claims after exhaustion of the $500,000 liability limit on Fiorella's auto policy and to personal claims after exhaustion of the $300,000 liability limit on his homeowner's policy. The liability limit on the umbrella policy was $1 million per occurrence. As noted earlier, the policy form of Fiorella's umbrella policy at the time of the accident made no reference to UM or UIM coverage.

State Farm tendered, and Fiorella accepted, its policy limit of $100,000 for Fiorella's claims against Deaton. Due to Deaton's lower limits of liability coverage and the extent of Fiorella's injuries and loss, Phoenix then paid to Fiorella the policy maximum of $400,000 in underinsured motorist benefits under its auto policy. Phoenix also paid to Fiorella $12,000 in medical pay and $22,475 in PIP benefits under its auto policy. The parties agree that Fiorella's total damages exceed the amount he has collected so far.

In April 1999, the then current policy period of the Phoenix umbrella policy expired. Phoenix issued to Fiorella a new umbrella policy rider which contained the explicit exclusion of UM and UIM coverage adopted in 1998.

Fiorella commenced this action to obtain a judicial declaration that the Phoenix umbrella policy provides additional UIM coverage. He seeks recovery of the full $1 million in coverage under the umbrella policy for his losses and injuries from the accident.

Phoenix moved to dismiss or, in the alternative, for summary judgment. The district court determined there was no genuine issue of material fact and granted Phoenix's motion for summary

judgment on the grounds that the umbrella policy provides no UIM coverage. Fiorella appeals.

The standards for summary judgment are well known to the parties, so we will not repeat them here. On appeal, we apply the same standards as the district court to determine if there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. See *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

*Statutory Construction of K.S.A. 40-284*

Fiorella argues K.S.A. 40-284 requires UIM coverage in an umbrella policy. He admits that K.S.A. 40-284(a) specifically excludes umbrella policies from the requirement of UM coverage. He contends, however, that the statute does not exclude UIM coverage from the required coverages in an umbrella policy.

UM coverage protects an insured for losses caused by a negligent driver who has no auto liability insurance. See *Bartee v. R.T.C. Transportation, Inc.*, 245 Kan. 499, 514, 781 P.2d 1084 (1989). Similarly, UIM coverage provides compensation to an insured who suffered damages as a result of a negligent motorist whose insurance is insufficient to pay the damages. See *Jones v. Automobile Club Inter-Insurance Exchange*, 26 Kan. App. 2d 206, 208, 981 P.2d 767, *rev. denied* 268 Kan. 887 (1999).

In *Barte*, our Supreme Court, in considering an earlier version of K.S.A. 40-284(a), see L. 1986, ch. 173, sec. 1, held that UM coverage was included in an umbrella policy that required the maintenance of an underlying primary policy. 245 Kan. at 515. *Bartee* does not control. The current version of K.S.A. 40-284 was adopted in 1988. L. 1988, ch. 152, sec. 1. Highly summarized, the current version of subsection (a) of the statute requires that all Kansas auto liability policies provide UM coverage equal to the policyholders' liability limits under those policies. However, insurers need not offer coverage in accordance with this section (*i.e.*, K.S.A. 40-284) in umbrella policies which do not provide primary auto liability coverage. Subsection (b) requires UIM coverage in any policy that provides UM coverage. Subsections (c) through (f)

relate to the rejection of coverage by the insured, coverage limitations, and subrogation matters not at issue in this case.

The plain language of K.S.A. 40-284(a) makes it clear that the exclusion from mandatory coverage in umbrella policies applies to both UM and UIM coverages. The statute explicitly excuses umbrella policies from the requirement to provide "coverage conforming to *this section.*" (Emphasis added.) K.S.A. 40-284(a). The section to which this refers is the entirety of K.S.A. 40-284, including subsection (b) which deals with UIM coverage. In oral argument before us, Fiorella conceded that K.S.A. 40-284(a) is a *subsection* of that *section* of the statutes denominated as K.S.A. 40-284. Thus, the statute exempts umbrella policies from the requirement of providing UM and UIM coverages.

Furthermore, Fiorella's argument that UIM coverage is mandatory in every umbrella policy is contrary to a logical construction of the statute. K.S.A. 40-284(b) requires UIM coverage only in conjunction with UM coverage. Fiorella agrees K.S.A. 40-284(a) makes UM coverage in an umbrella policy optional. Thus, if there is no mandatory UM coverage in an umbrella policy and UIM coverage is only required in conjunction with UM coverage, it logically follows that UIM coverage likewise is not mandatory in an umbrella policy.

Fiorella's claim that the public policy of Kansas requires that he recover UIM benefits under his umbrella policy is also unsupported. " 'The declaration of public policy is primarily a legislative function.' [Citations omitted.]" *Marshall v. Kansas Med. Mut. Ins. Co.,* 276 Kan. 97, 104, 73 P.3d 120 (2003). The legislature clearly stated our state's policy when it excluded umbrella policies from the type of policy in which the insurer must offer UM and UIM coverages.

### The Umbrella Policy as a Primary Policy

Fiorella points out that K.S.A. 40-284(a) exempts from the requirement of UIM coverage an umbrella policy "which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle." He argues that once coverage has been

exhausted on his auto policy, the umbrella policy becomes the primary insurance. From this he concludes that once the umbrella policy becomes primary, K.S.A. 40-284(a) requires that the policy provide UIM coverage. One of the problems with this argument is that in order to be a primary policy, the policy must refer to "a specifically insured motor vehicle." Fiorella's auto liability policy is his primary policy. Its declarations page specifically lists Fiorella's vehicles as a 1991 Acura Legend L and a 1997 Ford Expedition, each with specific VIN numbers. It identifies the principal driver and the primary use of each vehicle and where the vehicles are garaged. Fiorella's umbrella policy provides no such specificity. It applies to all automobiles, recreational vehicles, watercraft, and premises owned by Fiorella.

Further, Fiorella's use of the term "primary" is contrary to the commonly understood meaning of the term. In construing any statute, including K.S.A. 40-284(a), we seek to understand the legislature's intent by applying the commonly accepted meaning of the words used, absent an indication that they bear some special meaning. Webster's New World Dictionary 1129 (2d ed. 1974) defines primary as "first in time or order of development." Fiorella's primary auto policy is the one which paid him $400,000 in UIM benefits. It is the first of his policies to which he looked for recompense. The Phoenix umbrella policy does not become the primary policy upon exhaustion of the auto liability policy any more than a relief pitcher becomes a starter simply by taking over for a fading starting pitcher. The umbrella policy is not a primary policy.

*Policy Ambiguity*

Fiorella next claims that the umbrella policy is ambiguous as to whether it includes UIM coverage and, therefore, should be construed to include UIM coverage. Whether the policy is ambiguous is a question of law which we review de novo. See *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 920-21, 46 P.3d 1120 (2002).

The Phoenix umbrella policy is ambiguous if, when applying a reasonable construction to the policy's terms, a reasonably prudent insured would have doubts about the meaning of those terms or if

the policy's terms conflict. We do not examine policy terms in isolation but rather view them in the context of the policy as a whole. Nor do we strain to find ambiguity when common sense tells us otherwise. Finally, we do not conclude there is ambiguity simply because the parties disagree on the meaning of the policy's terms.

Fiorella claims the umbrella policy's numerous references to the underlying auto insurance coverage created an expectation of UIM coverage. Such an expectation requires the policyholder to ignore the very title of the policy: "Personal *Liability* Umbrella Policy." (Emphasis added.) Such an expectation flies in the face of the policy's terms, and a reasonably prudent insured would not harbor such an expectation. The mere fact that its liability coverage dovetails with Fiorella's auto policy so as not to create a "doughnut hole" in the continuum of his liability coverage does not support the notion that the umbrella policy provides ongoing UIM coverage once the limit of his primary auto policy has been exhausted.

Fiorella's primary auto policy provides UIM coverage in the insuring agreement, which states: "We will pay damages which an 'insured' *is legally entitled to recover* from the owner of operator of an 'uninsured motor vehicle' because of 'bodily injury': 1. Sustained by an 'insured'; and 2. Caused by an accident." (Emphasis added.) This contrasts with the insuring agreement in the umbrella policy, which provides: "[W]e will pay damages *for which the 'insured' becomes legally responsible* due to 'bodily injury', 'property damage', or 'personal injury' caused by an 'occurrence.' " (Emphasis added.) The umbrella policy provides liability coverage for claims by third parties against the insured. No reasonable insured who has read the policy would be left with the expectation that the umbrella policy covers the insured's claims against the insurer for the insured's own losses and damages. Fiorella's strained construction of the term "legally responsible" to include his responsibility to pay his own hospital and medical bills is unreasonable when viewed in light of the policy as a whole.

Similar language was considered in *Allstate Ins. Co. v. Johnston*, 339 F. Supp. 2d 1191, 1195 (D. Kan. 2004). There, the insuring agreement provided that Allstate "will pay when an insured becomes *legally obligated to pay* for personal injury or property dam-

age caused by the insured." (Emphasis added.) This limited recovery under the policy applies to claims for which the insured becomes liable to a third party. Similarly, the insuring agreement now before us limits coverage to damages for which the insured becomes legally responsible due to bodily injury, property damage, or personal injury caused by an occurrence, *i.e.*, an accident. The fact that the umbrella policy provides third-party liability coverage for claims made against its insured rather than first-party UIM coverage is underscored by policy exclusion 13, which makes it clear that the policy does not apply to bodily injury and personal injury to any insured. See *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 740, 829 P.2d 897 (1992).

Finally, Fiorella argues that the umbrella policy is ambiguous because Phoenix subsequently amended his policy to explicitly exclude UM and UIM coverage. If the policy was not ambiguous on its face at the time of the accident, a subsequent policy change does not retroactively create ambiguity. See *Liggatt*, 273 Kan. at 921-23 (construing the insurance policy and amendments in effect at the time of the accident).

The district court correctly concluded that Phoenix was entitled to judgment as a matter of law on Fiorella's claim for UIM coverage on his umbrella liability policy.

### *The Expert Witness*

Fiorella claims the district court erred in granting summary judgment without considering the testimony of Professor Jeffrey E. Thomas of the University of Missouri-Kansas City Law School. Specifically Fiorella states the court should have considered Thomas' opinion that "the construction of an insurance policy is not always a matter of law but also can be a question of fact especially when there is ambiguity, interpretation, or unclarity [*sic*] in the insurance contract or the group of inter-related contracts in question."

Professor Thomas' opinions were contained in his deposition which was taken during the course of discovery. His deposition was attached to Fiorella's brief in opposition to Phoenix's summary judgment motion. When asked for some indication in the record

that the district court did not consider Thomas' deposition testimony in ruling on Phoenix's motion, Fiorella conceded in oral argument before us that there was none. His true complaint is not that the district court failed to consider Thomas' opinions, but rather that the district court did not agree with them.

Thomas' testimony goes to the ultimate issue of ambiguity and interpretation of the written insurance policy. When asked for his main opinion in the case, Thomas stated:

"It's my opinion that the umbrella insurance policy from Travelers that was in force at the time of the accident can be reasonably interpreted to provide coverage excess to the uninsured [*sic*] motorist coverage that Mr. Fiorella had at the time of the accident.

. . . .

"Secondly, it's my opinion that the umbrella insurance policy applicable to the accident, the Travelers policy, is ambiguous as to whether or not it excludes coverage under the policy that would be excess to the underinsured motorist coverage provided to Mr. Fiorella."

Fiorella admits construction of an insurance policy is a question of law. Likewise, whether a written instrument is ambiguous is also a question of law. *Liggatt*, 273 Kan. at 921. Thomas' opinions addressed questions of law and did not create any disputed material facts for a trial.

Affirmed.