# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1686
_____

GEICO General Insurance Company; Government Employees Insurance Company

*Plaintiffs - Appellees*

v.

M.O.; Martin Brauner, also known as M.B.

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: June 12, 2024
Filed: August 2, 2024
_____

Before COLLOTON, Chief Judge, MELLOY and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Martin Brauner gave M.O. anogenital human papillomavirus, more commonly known as HPV, through sexual activity in Brauner's GEICO-insured automobile. M.O. threatened to sue Brauner and sent a demand letter to GEICO requesting payment of the $1,000,000 policy limit. GEICO sought a declaration in

federal court that M.O.'s claim was not covered under Brauner's policy. The district court[1] agreed with GEICO. Brauner and M.O. appeal.

**I.**

Brauner and M.O. had an ongoing sexual relationship that included at least one sexual encounter in Brauner's automobile. A year after that encounter, M.O. was diagnosed with HPV. M.O. threatened to sue Brauner, alleging that he had negligently failed to inform M.O. that he was infected with HPV or to take adequate steps to prevent M.O. from contracting HPV. M.O. also sent a demand letter to GEICO requesting that it pay M.O. $1,000,000, the policy limit under Brauner's GEICO Kansas Family Automobile Insurance Policy, to settle M.O.'s claim against Brauner. GEICO denied M.O.'s demand and filed a declaratory judgment action against Brauner and M.O. in the United States District Court for the District of Kansas, seeking a declaration that the policy did not cover M.O.'s injuries.

Meanwhile, Brauner and M.O. settled M.O.'s threatened lawsuit pursuant to Mo. Rev. Stat. § 537.065. Their settlement included an agreement to arbitrate M.O.'s negligence claim. "An agreement under [§ 537.065] expressly authorizes an insured to settle a personal injury or wrongful death action by agreeing that the plaintiff may collect the settlement only against the insurer." *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 907 (8th Cir. 2007). Under the § 537.065 agreement, M.O. agreed to collect only from GEICO if the arbitrator decided that Brauner was in fact negligent in transmitting HPV to M.O. The arbitrator awarded $5,200,000 to M.O. M.O. then sought and obtained confirmation of the arbitration award in Missouri state court, but GEICO appealed, arguing that it had a right to intervene and contest the award. The case made its way to the Supreme Court of Missouri, which vacated the confirmation of M.O.'s arbitration award and remanded the case to allow GEICO

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

to intervene in the confirmation action. *See M.O. v. GEICO Gen. Ins. Co.*, 657 S.W.3d 215, 216-17 (Mo. 2023).

While the parties were litigating in Missouri state court, the United States District Court for the District of Kansas determined that it lacked personal jurisdiction over M.O. because she was a Missouri resident with insufficient ties to Kansas. In light of this ruling, GEICO, Brauner, and M.O. agreed to transfer the case to the United States District Court for the Western District of Missouri. After the transfer, GEICO filed a motion for summary judgment. The district court granted the motion, finding that the policy unambiguously required covered bodily injury to arise out of the use of the automobile and that sexual activity in an automobile is not "using" an automobile under Kansas insurance law. Brauner and M.O. appeal.

## II.

"We review a grant of summary judgment on an insurance policy interpretation de novo, applying the same summary judgment standard as the district court and using state law to determine coverage issues." *BITCO Gen. Ins. Corp. v. Smith*, 89 F.4th 643, 645 (8th Cir. 2023). We will affirm a grant of summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The parties agree that Kansas law governs the interpretation of the policy, and "[t]his court is bound by decisions of the highest state court when interpreting state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). "If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." *Id.*

"Under Kansas law, an insurance policy constitutes a contract, and the interpretation of a contract is a question of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015). "The primary rule in interpreting written contracts is to ascertain the intent of the parties." *Liggatt v. Emps. Mut. Cas.*, 46 P.3d 1120,

-3-

1125 (Kan. 2002). "The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean." *Fancher v. Carson-Campbell, Inc.*, 530 P.2d 1225, 1229 (Kan. 1975). "If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003). "If the language is ambiguous, the construction most favorable to the insured must prevail." *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Cath. Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992).

## A.

Brauner and M.O. first argue that the plain language of GEICO's Kansas Family Automobile Insurance Policy either clearly covers a disease acquired through sexual activity or is sufficiently ambiguous that we must construe the policy such that it provides coverage. In relevant part, the policy states that GEICO:

> [W]ill pay damages which an insured becomes legally obligated to pay because of:
>
> 1.  bodily injury, sustained by a person, and;
>
> 2.  damage to or destruction of property, arising out of the ownership, maintenance or use of the owned auto or a non-owned auto.

Brauner and M.O. read this sentence to mean that GEICO will pay 1) damages that Brauner is "legally obligated to pay because of bodily injury sustained by a person" and 2) damages that Brauner is "legally obligated to pay because of damage to or destruction of property, arising out of the ownership, maintenance or use of the owned auto or a non-owed auto." To support this interpretation, Brauner and M.O.

point to the line break and semicolon between the bodily-injury and property-damage provisions. Under the punctuation and last-antecedent canons of construction, "placement of punctuation is presumed to have meaning," *Miami Cnty. Bd. of Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 255 P.3d 1186, 1215 (Kan. 2011) (Leben, J., concurring), and "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent," *Taylor v. Perdition Mins. Grp., Ltd.*, 766 P.2d 805, 810 (Kan. 1988). Both canons support Brauner and M.O.'s interpretation that the "arising out of the ownership, maintenance or use of the owned auto or a non-owned auto" qualifier applies only to the property clause of the sentence, not the bodily injury clause. Thus, on their reading, the policy does not require covered bodily injury to "aris[e] out of the ownership, maintenance, or use" of Brauner's automobile.

However, under Kansas law, we "determin[e] the intention of the parties to an insurance policy" by considering "what a reasonable person in the position of the insured would understand [the policy] to mean." *Fancher*, 530 P.2d at 1229. And "when interpreting a contract or statute, we derive meaning not just from abstract words in isolation, but from their context and from the document as a whole." *Payless Shoesource Inc. v. Travelers Companies Inc.*, 585 F.3d 1366, 1374 (10th Cir. 2009) (applying Kansas law); *see also Golden Rule Oil Co. v. Liebst*, 109 P.2d 95, 97 (1941) ("It is not a fair interpretation of any document, letter, contract, or whatnot, to excise from its context a single sentence, statement or paragraph, and give it controlling significance while ignoring the other recitals of the instrument."). This principle casts doubt on Brauner and M.O.'s assertion that "a reasonably prudent insured would . . . read the language [quoted above] in isolation" and conclude that, in purchasing automobile insurance, he has also purchased insurance covering any bodily injury for which he becomes liable.

The Supreme Court considered a remarkably similar case of "less-than-meticulous drafting" in *United States v. Hayes*, 555 U.S. 415, 423 (2009). The criminal statute at issue in *Hayes* provided that:

> [T]he term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by [a person in a domestic relationship with the victim].

*Id.* at 420-21 (quoting 18 U.S.C. § 921(a)(33)(A)). The question confronted by the Supreme Court was whether the "committed by" provision modified both clauses (i) and (ii) or whether it modified only clause (ii)—the same interpretive question before us here. In *Hayes*, the court of appeals had held that the "committed by" provision modified only clause (ii), endorsing a theory similar to the one advanced by Brauner and M.O. and for the same reasons: "clause (ii) is separated from clause (i) by a line break and a semicolon; in contrast, the components of clause (ii)—force and domestic relationship—are joined in an unbroken word flow," *id.* at 423, and under "the 'rule of the last antecedent,' . . . a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows," *id.* at 425. But the Supreme Court disagreed, concluding that the awkward phrasing of the clause was "not significant in view of the *un*natural reading that would result" from interpreting "misdemeanor crime of domestic violence" not to require a domestic relationship as an element. *Id.* at 424. The Supreme Court explained that "[t]he rule of the last antecedent . . . is not an absolute and can assuredly be overcome by other indicia of meaning." *Id.* at 425. Such indicia include the series-qualifier canon, which holds that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (internal quotation marks omitted).

When we view the policy at issue through the lens of "what a reasonable person in the position of the insured would understand [the policy] to mean," *Fancher*, 530 P.2d at 1229, we conclude that the "arising out of" clause unambiguously modifies both the "bodily injury" and "property damage" clauses.

As in *Hayes*, Brauner and M.O.'s proffered interpretation of the sentence would result in an "unnatural reading" of the policy. The series-qualifier canon, which "generally reflects the most natural reading of a sentence," *Facebook*, 592 U.S. at 403, suggests that the "arising out of" language applies to bodily injury. "Imagine if a teacher announced that 'students must not complete or check any homework to be turned in for a grade, using online homework-help websites.' It would be strange to read that rule as prohibiting students from completing homework altogether, with or without online support." *Id.* That sort of "strange" argument is exactly what Brauner and M.O. urge us to adopt here: that GEICO's auto insurance policy requires property damage to arise out of the ownership, maintenance, or use of an automobile, but also provides coverage for any bodily injury the insured causes—with or without an automobile. Perhaps recognizing the absurdity of such an outcome, Brauner and M.O. argue that a claim still must "*involve* either an owned auto or non-owned auto," or have some unspecified "*connection* to a vehicle." Yet this argument is similarly unavailing, nonsensically suggesting that the policy requires an automobile to be present at the scene of, but otherwise wholly unrelated to, a suffered bodily injury.

"[A] reasonable person in the position of the insured," *Fancher*, 530 P.2d at 1229, would "derive meaning not just from abstract words in isolation, but from their context and from the document as a whole," *Payless Shoesource*, 585 F.3d at 1374, and would not believe that his automobile insurance covers any bodily injury for which he becomes liable. Thus, "[d]espite the awkward language . . . no reasonably prudent insured would read the provisions in the manner suggested" by Brauner and M.O. *Universal Underwriters Ins. Co. v. Hill*, 955 P.2d 1333, 1338 (Kan. Ct. App. 1998). To be covered under the policy, "bodily injury, sustained by a person" must "aris[e] out of the ownership, maintenance or use of the owned auto or a non-owned auto."

B.

Brauner and M.O. alternatively argue that M.O.'s injuries are covered under the policy because they in fact arose "out of the ownership, maintenance or use of

the owned auto."  Their argument relies heavily on *Garrison v. State Farm Mut. Auto. Ins. Co.*, a case in which the Supreme Court of Kansas held that a leg injury caused by the accidental firing of a shotgun as it was taken from an automobile during a hunting trip arose "out of the ownership, maintenance, or use of a motor vehicle."  907 P.2d 891, 894 (Kan. 1995).

*Garrison* holds that "for insurance coverage to exist for accidental bodily injury, there is no requirement that the vehicle be either the proximate cause of the injury or physically contribute to" the immediate cause of the injury.  *Id.* at 895.  "Coverage exists where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle . . . ."  *Id.*  Brauner and M.O. argue that sexual activity in an automobile is just as foreseeable and reasonable as using an automobile for a hunting trip, so the logic of *Garrison* compels reversal.

Yet *Garrison* reiterates that "Kansas follows the majority rule that there must be some causal connection between the use of the insured vehicle and the injury."  *Id.* (citing with approval *Hamidian v. State Farm Fire & Cas. Co.*, 833 P.2d 1007, 1010-11 (Kan. 1992) and *Farm Bureau Ins. Co. v. Evans*, 637 P.2d 491, 494 (Kan. Ct. App. 1981)).  "[M]erely because a motor vehicle is the situs of an injury" does not mean that "the injury . . . necessarily arise[s] out of the use of the motor vehicle."  *Id.* at 896; *see Hamidian*, 833 P.2d at 1012.  As stated in *Hamidian*, "[t]he ownership, use, or maintenance of the vehicle must have a greater nexus to the injury than just relating to a party being in the wrong place at the wrong time."  833 P.2d at 1013.  And even if a "vehicle was being 'used' within the meaning of the coverage clause because of its use as a shelter," that "is not sufficient to trigger coverage" if "that use is so remote from the negligent act that it can be said there was no causal relationship between the use of the car and the injuries sustained."  *Evans*, 637 P.2d at 493.

*Garrison* distinguished *Hamidian* and *Evans* on the grounds that the automobile in *Garrison* "was more than the 'situs of injury'" because it "was being used to transport" the hunters and their guns, when the accident occurred "the engine

-8-

was running," and the plaintiff "was driving" and "had intended to drive further." 907 P.2d at 896. Unlike *Garrison*, the record does not reflect that at the time M.O. contracted HPV Brauner's automobile was being used to transport anyone, was being driven, or that the engine was running. *See Expl. Place, Inc. v. Midwest Drywall Co.*, 89 P.3d 536, 541 (Kan. 2004) ("Generally, the burden is on the insured to prove that a loss falls within the scope of an insurance policy."). Even if we assume that using an automobile as a shelter counts as "use" within the meaning of the insurance policy so as to trigger coverage, such use cannot be "so remote from the negligent act that it can be said there was no causal relationship between the use of the car and the injuries sustained." *Evans*, 637 P.2d at 493. The negligent act here was Brauner's failure to tell M.O. that he had HPV or to take steps to prevent its transmission to M.O. The most relevant analogy is thus not to *Garrison* but to *Evans*, in which the use of a vehicle as a shelter in the rain to light a firecracker which subsequently injured another was not covered under the policy because one just as easily could have "held the device under the car or stood on the 'leeward' side of it to light the device." *Id.* at 494. No causal relationship exists between Brauner and M.O.'s decision to shelter in an automobile for a sexual encounter as opposed to choosing to shelter in a house, or not shelter at all, and Brauner's transmission of HPV to M.O. Brauner's automobile was nothing more than the situs of M.O.'s injury. Thus, it cannot be said that Brauner's negligent transmission of HPV to M.O. arose out of the use of the automobile.

## III.

The insurance policy unambiguously covers only bodily injury arising out of the ownership, maintenance, or use of Brauner's automobile. Because M.O.'s injuries did not "aris[e] out of the . . . use" of Brauner's automobile, the district court did not err in granting summary judgment to GEICO. We affirm.

_____